MAX N. TOBIAS, JR., Judge.
kThe plaintiff/appellant, Thomas Clark (“Officer Clark”), appeals the judgment of the New Orleans Civil Service Commission (“CSC”) that affirmed the punishment of termination levied by the New Orleans Police Department (“NOPD”) in 2011.
The material facts are not in dispute. On 30 June 2009, Officer Clark was employed by the NOPD Sixth Police District *533 Task Force. At that time, he was a ten-year veteran of the NOPD without any prior disciplinary record. Police officers assigned to the task force are employed to patrol their assigned area proactively to find and respond to criminal activity where criminal activity is generally known to occur. Officer Clark was working in a two-man police unit with his partner, Officer Henry Hollins.
Officer Clark testified that, while patrolling their assigned area, they observed a female subject standing outside an open door of a van. When the female subject saw their police unit approaching, she slammed the door of the van and walked away. Because the area was known for narcotics activity, they elected to conduct a suspicious person stop. With the stop only two blocks from the Sixth District Station, the officers elected to transport the subject to the station for further 12questioning. However, they failed to obtain permission from their ranking officer, or notify the dispatcher of the police unit’s mileage before the transport. After reaching the station, Officer Hollins informed Officer Clark that he was not going to process the female subject and instead would return her to where they originally detained her. Officer Hollins stated he was ending his shift and going home after dropping her off.
At this time, as it was nearing the end of his tour of duty, Officer Clark decided to leave work a little early. He did so, under the impression that Officer Hollins would drop the female off and the shift would be over.[1]
Unbeknownst to Officer Clark, Officer Hollins escorted the woman out of the station and took her to a remote location, where he attempted to rape her. Officer Hollins was subsequently árrested, prosecuted, and convicted of attempted aggravated rape and second degree kidnapping. Officer Clark was also charged with second degree kidnapping, but those charges were dismissed.
An administrative investigation of Officer Clark resulted in a 20-day suspension for leaving work early and a ten-day suspension for a breach of professionalism.[2] The appointing authority classified the sustained violation of Chapter 71.1, Prisoner Transportation, Paragraph 18 and 19, to a Category 3 | .^offense.[3] As a Category 3 offense, the punishment of termination was authorized and Officer Clark was terminated.[4]
Officer Clark timely appealed this action to the CSC. On 11 January 2012, a hear *534 ing was held before a CSC hearing examiner. At this hearing, both the appointing authority and the appellant were allowed to present evidence and sworn testimony.
Upon the conclusion of the hearing and consideration of the evidence, an opinion was rendered by the hearing examiner who opined that “[t]he Appointing Authority offered no testimony explaining why termination was an appropriate penalty commensurate with the violation.” In its conclusion, the hearing officer stated:
The Appointing Authority has established that the Appellant failed to provide the dispatcher with the police unit’s mileage before transporting a detained subject. The Appointing Authority also established that the Appellant failed to contact a supervisor and obtain permission before transporting the detained subject two blocks to the district station. However, the Appointing Authority has failed to establish that the penalty was commensurate with the violation. The Appointing Authority offered no evidence, or even a theory, as to how the minor violations that the investigation uncovered related to the criminal activity by Officer Hollins or the civil rights violations suffered by the female subject at his hands. The undisputed facts establish that the criminal activity did not occur during the initial stop and transport when the administrative violations occurred. The |4criminal activity occurred after the Appellant’s role in the sequence of events had ended.
The Appointing Authority has failed to establish that the Appellant violated internal rules regarding professionalism. He neither participated in nor is in any way responsible for the criminal acts of his partner that caused embarrassment to the department.
The Appointing Authority has established that the Appellant left work early without permission of a supervisor. The Appellant admitted the violation.
Therefore, based upon the foregoing:
1. Instructions from an Authoritative Source, Prisoner Transportation. The Appellant’s appeal should be GRANTED in part and DENIED in part with a reduced penalty.
2. Professionalism. The Appellant’s appeal should be GRANTED.
3. Ceasing to Perform Before End of Tour of Duty. The Appellant’s appeal should be DENIED.
The opinion was forwarded to the CSC for review and ratification. After review, the CSC denied the appeal of Officer Clark and found that termination was the appropriate penalty. This appeal followed.
The CSC has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. Art. X, § 12; Pope v. New Orleans Police Dept., 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The CSC is not charged with such discipline. The authority to modify a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Pope, pp. 5-6, 903 So.2d at 4.
The appointing authority has the burden of proving by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such ¿¡^dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service employees is *535 only against firing or other discipline without cause. La. Const. Art. X, § 12; Cornelius v. Dept. of Police, 07-1257, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 00-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
The decision of the CSC is subject to review on any question of law or fact upon appeal to this court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. Art. X, § 12; Cure, p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision of the CSC is “arbitrary and capricious” if there is no rational basis for the action taken by the CSC. Id., p. 2, 964 So.2d at 1095.
Before addressing the merits of Officer Clark’s appeal, we first consider the NOPD’s argument that the appeal should be dismissed for a procedural defect. The NOPD argues that Officer Clark failed to timely assert assignments of error of the CSC’s decision in his application (ie., notice) for appeal to this court; that is, the NOPD avers that the application for appeal failed to separately and particularly set forth specific assignments of error. In the notice of appeal, Officer Clark stated that the “Civil Service Commission erred in denying Appellant’s appeal.”
Uniform Rules — Courts of Appeal, Rule 3-1.1, states in pertinent part:
1 fiEvery application for appeal from a final decision of any administrative body shall be filed with the appropriate administrative body in writing as required by law and shall include an assignment of errors, which shall set out separately and particularly each error asserted and a designation of the portions of the record desired to be incorporated into the transcript. Within 5 days after the filing of an application for appeal, any other party to the appeal may file a designation of additional portions of the record to be included for a proper review of the questions comprised within the assignment of errors. The administrative body shall transmit to a Court of Appeal, as a transcript of the record, only the portions of the record so designated. Costs for the inclusion of any unnecessary part of the record in any transcript may be assessed against the party requiring such inclusion. If by written stipulation filed with the administrative body, all parties agree on the portions of the record to be included in the transcript, only such portions shall be included. In all cases the application for appeal, the assignment of errors and the designation of the record shall be copied into the transcript. The administrative body shall certify the correctness of the transcript of the record.
In his brief, but not in his application for appeal, to this court, Officer Clark formally assigns three errors:
1. Did the appellant violate NOPD Chapter 71.1, paragraphs 18 and 19, when transporting a subject to the nearest police station?
2. Did the NOPD properly enhance and classify the allegations for which the officer was terminated or prove such enhancement was proper?
3. Was the punishment of the termination commensurate with the dereliction of duty?
Although our Uniform Rule indicates that an application (i.e., notice) of appeal of a decision to this court requires that the applicant assign errors, this rule is at odds *536 and contrary to both statute and Louisiana Supreme Court jurisprudence.
In Rodrigue v. Rodrigue, 591 So.2d 1171 (La.1992), the Court stated:
17Plaintiff s writ application is granted. The judgment of the court of appeal holding that Local Rule 22 of the Rules of the Thirty-Second Judicial District Court is not in conflict with the provisions of Louisiana Code of Civil Procedure article 1312 is hereby reversed.... The requirements of delivery or mailing of all pleadings under Local Rule 22 constitutes service under Code of Civil Procedure article 1313. Article 1312 specifically exempts any pleading not required by law to be in writing from service. Code of Civil Procedure article 1701 provides that preliminary defaults may be obtained by oral motion in open court or by written motion. Since local rules of court cannot conflict with legislation, see Trahan v. Petroleum Cas. Co., 250 La. 949, 200 So.2d 6 (1967), Local Rule 22 of the Thirty-Second Judicial District Court is hereby declared null and void to the extent it conflicts with Code of Civil Procedure article 1312. The judgment of default entered by the trial court is hereby reinstated. [Emphasis supplied.]
We note that La. C.C.P. art. 2129 does not require an appellant in this court to assign errors in his brief, while the Uniform Rules, Courts of Appeal, Rule 2-12.4 provide otherwise.[5] In light of Rodrigue, we cannot enforce it.
In Rocque v. Dept, of Health and Human Resources, Office of Secretary, 505 So.2d 726, 728 (La.1987), the Court held that summary dismissal of an appeal where the notice of appeal does not contain assignments of error “acts as a trap for the unwary appellant who does not learn of the insufficiency of his appeal ... until the time for remedying any deficiencies has already elapsed,” and is thus [ ^unreasonable and unduly burdensome on appellants. See La. Const. Art. X, § 8. Accordingly, we hold that an appellant in a civil service matter need not assign specific error(s) committed by the CSC in his motion, application, or notice of appeal to this court.
Because the majority of the facts are not disputed, we do not summarize the brief testimony given at the hearing. However, one point needs clarification: whether or not the victim was arrested before being brought to the station on the evening in question.
Officer Clark argues in his brief that the victim was not arrested and that the record is devoid of any reference to any violation for which she could have been arrested. We agree with the latter assertion. However, at the hearing, he testified that the victim was arrested that night, although Officer Clark was never asked why. Therefore, we find that Officer Clark has admitted to the arrest and cannot now argue otherwise.
After reviewing the record, we fail to find any evidence indicating that Officer Clark’s administrative violations bore a *537 real and substantial relationship to the efficient operation of the NOPD. Officer Clark cannot be penalized for the criminal actions of his former partner. As summarized by the hearing examiner:
Sgt. Kevin Stamp investigated the incident and testified that internal rules require police officers to contact their supervisor and obtain permission before transporting an arrested subject to a police station. He testified that the Appellant and his partner failed to contact a supervisor. Sgt. Stamp also found that the Appellant and his partner failed to contact the dispatcher and report their mileage before transport. Sgt. Stamp testified that the requirement allows the Appointing | gAuthority to monitor a police officer’s efficient use of time when transporting a detained subject. He offered no testimony linking either rule violation with Officer Hollins’ criminal activity.
In fact, Sgt. Stamp offered no testimony regarding the actual stop or the transport of the female subject to the district station. There is, therefore, no evidence to support a claim that the stop and transport was unlawful. It follows that the only misconduct of which the Appellant stands accused are the two minor violations described above. It should be further noted that Sgt. Stamp offered no testimony drawing into question the Appellant’s acceptance of his partner’s decision not to process the female subject and to return her to where she was first detained. The disciplinary letter makes no mention of the Appellant’s acquiescence in or awareness of his partner’s intentions and contains no determination that the Appellant was in any way responsible for his partner’s criminal acts.
Sgt. Stamp’s supervisor, Lt. Errol Foy, testified that he reviewed and agreed with Sgt. Stamp’s investigative report. He testified that a charge of Professionalism was sustained because Officer Hollins’ criminal activity caused negative publicity and reflected badly on the New Orleans Police Department. The Appointing Authority offered no testimony explaining why termination was an appropriate penalty and commensurate with the violation.
The Appellant testified that, because of the close proximity of the arrest to the station, he and his partner chose not to seek permission from a supervisor to transport the female subject or to notify the dispatcher of their mileage before driving two blocks to the district station.
Clearly, the NOPD is holding Officer Clark responsible for the criminal actions of his former partner. In its brief, the NOPD states:
Specifically, the Appellant did not follow protocol in transporting an arrested citizen to the police station. This directly led to the act of brutal crimes, which could have easily been avoided. Appellant’s violation of department rules served to undermine the image and efficiency of the NOPD.
This is bunkum and if embraced by this court would make the NOPD (the appointing authority) and us both wrong. Even if Officer Clark had contacted his |,(¡supervisor before transporting the victim and called dispatch with the mileage information, Officer Hollins could still commit the criminal acts he committed. No correlation exists between Officer Clark’s violation of protocol and the unfortunate acts that occurred later in the evening. No action undertaken by Officer Clark undermined the image and efficiency of the NOPD. The NOPD has failed to carry its burden of proof and the CSC erred in affirming the discipline imposed, that being termination. We further find that the *538 CSC’s penalty of termination was arbitrary and capricious; that the punishment was not commensurate with the infraction.
We must now determine an appropriate penalty for Officer Clark’s administrative violations. In order to do so, we are directed to Chapter 26.2 of the NOPD’s Operations Manual, entitled, “Disciplinary Hearings/Penalties.” The penalty schedule is attached to that document as “Appendix C,” (hereinafter referred to as the “schedule”). The schedule describes the elements of a Category 1 offense, stating:
Category 1 (Minor):
a. Does not affect the rights or liberties of another;
b. Involves only an administrative investigation or violation; and/or
c. Does not affect job performance.
Based on our review of the record, we find that Officer Clark’s violation of paragraphs 18 and 19 falls within Category 1.
Paragraph 4:(4c), addresses certain enumerated acts and omissions that are considered to be “neglect of duty.” This includes “[flailing to comply with instructions, oral or written, from any authoritative source.” Breach of a Category 1, first offense, subjects the officer to a range of a reprimand to a five-day suspension. Here, Officer Clark committed two violations. Therefore, we impose |na five-day suspension for each charge, for a total for all violations (see footnote 1, supra) of a thirty-day suspension for the violations committed by Officer Clark in this matter.[6] Finally, we reverse the ten-day suspension for professionalism, as we find that Officer Clark did not violate that section of the Service Manual.
Therefore, the decision of the CSC is reversed in part and the NOPD is ordered to reinstate Thomas Clark as a member of the department with back pay and all emoluments of office as of 29 June 2011, subject to the total imposed 30-day suspension levied herein.
AFFIRMED IN PART, REVERSED IN PART; RENDERED.

. Officer Clark ended his shift thirty minutes early without obtaining the permission of his supervisor. He admits that he violated this rule and does not contest his 20-day suspension for that violation.

. The paragraph on professionalism provides that:
Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual.

. Paragraph 18 requires that the arresting/transporting officers request their supervisor's permission prior to transporting any arrested subject to a district .station. Paragraph 19 requires the officers to inform the dispatcher of the beginning mileage and the intended destination of the transport.

.Chapter 26.2, "Disciplinary Hearings/Penalties” describes the elements of a Category 3 offense. It states:
Category 3 (Major):
a. May affect the rights or liberties of another;
b. May affect job performance; and/or
c. Involves a serious administrative or criminal violation.

. In pertinent part, Rule 2-12.4 states:
The brief of the appellant or relator shall set forth the jurisdiction of the court, a concise statement of the case, the ruling or action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought. [Emphasis supplied.]
See also Uniform RulesCourts of Appeal, Rule 3-1.5.

. While one might argue that a five-day suspension per charge is harsh, we recognize that:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
Stevens v. Department of Police, 00-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627 [citation omitted.]