SANDRA CABRINA JENKINS, Judge.
| j Sergeant David Liang seeks review of the Civil Service Commission’s decision denying his appeal of the discipline imposed by the New Orleans Police Department (“NOPD”). Following an administrative investigation, the NOPD determined that Liang violated internal departmental rules regarding Instructions from an Authoritative Source and Neglect of Duty and imposed upon him a three day suspension and a demotion from Sergeant to Police Officer. • Liang appealed the decision of the NOPD to the Civil Service Commission (“Commission”). After a hearing, the Commission found that the NOPD established good and lawful cause for the discipline, upheld the discipline imposed, and denied Liang’s appeal.
Now before this Court, Liang argues that the Commission erred in upholding the discipline imposed by the NOPD because the NOPD failed to comply with the minimum standards set.forth under La. R.S. 40:2531, known as the Police Officer’s Bill of Rights, by failing to complete the administrative investigation of Liang within sixty days. The NOPD maintains that the sixty-day time limit to complete administrative investigations does not apply here, pursuant to O’Hern v. 2Dept. of Police, 13-1416 (La.11/08/13), 131 So.3d 29, because the administrative investigation of Liang was delayed until a criminal investigation of two other officers was completed.
Upon our de novo review of the facts and applicable law, we find that the Commission erred in upholding the discipline imposed by the NOPD because the NOPD failed to comply with the minimum standards for completing an administrative investigation within sixty days. • Contrary to the argument asserted by the NOPD, the facts and circumstances of this case are distinguishable from O’Hem, which we find inapplicable to this case. In contrast to O’Hem, the NOPD failed to show any real or substantial correlation between the administrative investigation of Liang and the investigation of alleged criminal activity by other officers such that the administrative investigation would interfere with any criminal investigation. Under these circumstances, the NOPD’s criminal investigation of unrelated allegations of criminal activity cannot excuse the failure to comply with the minimum standards for completing an administrative investigation within sixty days as required under La. R.S. 40:2531 B(7). Consequently, we find that the Commission erred in denying Liang’s appeal and upholding the discipline imposed and we reverse the decision of the Commission and render the discipline imposed an absolute nullity.
| «BACKGROUND
In June, 2009, Sergeant David Liang was an NOPD supervisor in command of the Sixth District Task Force. Liang was on duty on June 30, 2009 at 3:00p.m. until July 1, 2009 at 3:00a.m.
On July 1, 2009, the Public Integrity Bureau received a complaint involving allegations of criminal activity by Officer Henry Hollins and Officer Thomas Clark, who were assigned to the Sixth District Task Force. The female complainant alleged that the officers pulled over their patrol car to speak with her and, subsequently, detained her. The officers placed the female complainant in the back of the patrol car and drove to the Sixth District station.[1] Upon arriving at the station, Clark exited *1223 the patrol car and walked inside the station. Hollins continued to detain the female complainant in the patrol car, drove her to another location, and raped her. Hollins then drove her back to the location where she was first detained and released her. The female complainant called 911 and reported these events at approximately 7:15 a.m. on July 1, 2009. In her complaint, she stated that these events occurred in the late hours of June 30, 2009 into the early morning hours of July 1, 2009.
Upon receiving the criminal complaint against Officers Hollins and Clark, the NOPD Public Integrity Bureau assigned Sergeant Kevin Stamp to conduct the internal investigation of possible criminal activity and rule violations by Hollins |4and Clark. Based on the allegations within the complaint, Sgt. Stamp initiated a DI-1 formal disciplinary investigation of Hollins and Clark. As soon as the complaint was received, the NOPD Sex Crimes Unit also initiated a criminal investigation of the alleged rape. Sgt. Joseph Lorenzo of the Sex Crimes Unit was assigned to conduct the criminal investigation.[2]
At the Commission hearing, PIB investigator Sgt. Stamp testified about the initiation of the criminal investigation of Hollins and Clark and the subsequent administrative disciplinary investigation of Liang. Sgt. Stamp stated that there were never any allegations of criminal activity involving Liang. Liang was not interviewed in relation to, or during the course of, the criminal investigation of Hollins and Clark. Within the first two days of the criminal investigation, however, Clark provided a voluntary statement to the criminal investigators in which he admitted to leaving work before the end of his shift on July 1, 2009. Sgt. Stamp testified that Clark’s statement prompted the initiation of an administrative investigation of Liang for possible rule violations as the on duty supervisor for Hollins and Clark on the night in question. However, a separate PIB disciplinary investigation was not initiated and the allegations of administrative rule violations against Liang were incorporated into the DI-1 investigation of Hollins and Clark.
Sgt. Stamp did not interview Liang or conduct any investigation into Liang’s possible rule violations until after the conclusion of the .criminal investigation of Hollins and Clark. The criminal investigation of Hollins and Clark | Swas turned over to the Orleans Parish District Attorney’s Office for review and determination of possible charges on August 28, 2009.[3]
*1224 In March, 2011, Sgt. Stamp began his administrative investigation of Liang’s possible rule violations by conducting an interview with Liang. The administrative disciplinary investigation of Liang involved allegations that he violated Rule 4, Paragraph 4, Neglect of Duty — for failure to supervise his subordinates — and Rule 4, Paragraph 2, Instructions from an Authoritative Source — for failure to accurately report payroll. The alleged violations stemmed from his supervisory shift on June 30, 2009 into July 1, 2009.
From his administrative interview with Liang, Sgt. Stamp learned that, on the night in question, Liang was the immediate supervisor for Hollins and Clark. Liang stated that he had conducted roll call at the beginning of the shift, but Liang did not conduct roll call at the end of the shift and he admittedly failed to collect the “trip sheets” for that shift from Hollins and Clark. Sgt. Stamp determined that Liang was not aware, at the end of the shift on July 1, 2009, that either Hollins or Clark had left work before the end of the shift. Sgt. Stamp further determined that LLiang had no knowledge that either of his subordinates had engaged in any criminal conduct or rule violations during the shift, until Liang was informed about the criminal complaint against Hollins and Clark.
Sgt. Stamp completed his administrative investigation of Liang’s rule violations on April 11, 2011. On that date, Sgt. Stamp sent notification to Liang that the investigation was complete, that Sgt. Stamp was recommending to the NOPD Superintendent that the alleged rule violations be sustained, and informed Liang of his pre-disciplinary hearing date. After his pre-disciplinary hearing, on August 8, 2011, the NOPD issued the disciplinary letter to Sgt. Liang stating that it had determined that Liang violated the rules relative to (a) Instructions from an Authoritative Source by failing to ensure all payroll information was accurately and timely entered and (b) Neglect of Duty for failure to properly supervise subordinates. For the first violation, the NOPD imposed a three day suspension against Liang. For the violation of Neglect of Duty, which was found to be Liang’s fourth offense of a Rule 4 Performance of Duty violation, the NOPD demoted Liang from Sergeant to Police Officer.[4]
Liang appealed the NOPD’s disciplinary decision to the Commission. The Commission held a hearing on Liang’s appeal on May 81, 2012. Sgt. Stamp and Liang testified at the hearing. Based on the testimony and evidence introduced at the hearing, the hearing examiner issued a report on November 25, 2012. The |7report recommended that Liang’s appeal be denied because the Appointing Authority, the NOPD, had established by a preponderance of the evidence that it disciplined Liang for cause. The hearing examiner stated, “[a]s a supervisor, the Appellant was responsible for his subordinates’ actions while they were on duty. The Appellant failed to ensure that his subordinates accounted for all of their time by requiring them to provide their trip sheets at the end of their shift.” The hearing examiner noted, “[t]he Administrative investigation was stayed pending the resolution of the criminal charges against Officers Hollins and Clark” and during the three years prior to the NOPD demoting Liang, he *1225 had remained in his supervisory position with the Sixth District Task Force.
Upon review of the hearing examiner’s report, the Commission adopted the hearing examiner’s findings and recommendations, denied Liang’s appeal, and upheld the discipline imposed by the NOPD. Liang timely appealed the decision of the Commission.
STANDARD OF REVIEW
An employee who has gained permanent status in the civil service shall not be subjected to disciplinary action except for cause expressed in writing. La. Const. art. X § 8; Mulvey v. Dept. of Police, 12-1041, p. 5 (La.App. 4 Cir.1/30/13), 108 So.3d 891, 894. In operating and maintaining the efficiency of a civil service department, the appointing authority has the authority to discipline its employees for sufficient cause. Pope v. New Orleans Police Dept., 04-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. When the appointing authority imposes discipline 18upon an employee, the employee has the right to appeal to the Civil Service Commission, which has the authority to hear and decide all disciplinary cases. La. Const, art. X § 12. “When a disciplinary action is appealed to the Civil Service Commission, the Commission ‘has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action and, if so, whether the punishment is commensurate with the dereliction.’ ” Bell v. Dept. of Police, 13-1529, p. 5 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 874-75 (quoting Whitaker v. New Orleans Police Dept., 03-0512, p. 2 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 574).
“The final decision of the Commission shall be subject to review on any question of law or fact upon appeal to the court of appeal.” La. Const, art. X, § 12. The appellate court reviews the Commission’s findings of fact using the clearly wrong or manifest error standard of review. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094. “In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the [Commission] order unless it was arbitrary, capricious, or characterized by an abuse of discretion.” Id.
In reviewing the Commission’s determinations on questions of law, this court exercises its constitutional duty to review questions of law de novo and render judgment on the record. Russell v. Mosquito Control Bd., 06-0346, p. 8 (La.App. 4 Cir.9/27/06), 941 So.2d 634, 640. As stated by this Court in Bell, “[t]he question of ^whether the Commission erred in its construction and application of the sixty-day deadline set forth in La. R.S. 40:2531(B)(7) involves the interpretation of law and is therefore subject to de novo review.” 13-1529, p. 6, 141 So.3d at 875; see also McMasters v. Dept. of Police, 13-0348, p. 7 (La.App. 4 Cir. 10/9/13), 126 So.3d 684, 689.
LAW AND ANALYSIS
In Liang’s first assignment of error, he argues that the NOPD administrative investigation of his alleged rule violations failed to comply with the minimum standards set forth in La. R.S. 40:2531(B)(7) and, consequently, the discipline imposed is an absolute nullity. Whenever a police officer is under investigation, La. R.S. 40:2531, known as the Police Officer’s Bill of Rights, provides in pertinent part,
B. (7) When a formal and written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized repre *1226 sentative shall initiate an investigation ■within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days.... If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days.... The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Further, nothing in this Paragraph shall limit any investigation •of alleged criminal activity.
| ipLiang argues that the administrative investigation into his alleged rule violations violated the minimum standards in La. R.S. 40:2531 B(7) because it exceeded the sixty day time limitation by 589 days.
The record reflects that the formal DI-1 investigation was initiated on July 1, 2009. Sgt. Stamp testified that when the DI-1 was initiated against Hollins and Clark there were no allegations of criminal activity or rule violations against Liang. Although. Sgt. Stamp became aware of the possible rule violations by Liang within the first few days of the initiation of the DI-1, from learning that Clark had left work early without permission, Sgt. Stamp stated that no separate administrative investigation was initiated against Liang. When asked at the Commission hearing whether there was anything precluding an immediate administrative investigation into Liang’s possible misconduct, Sgt. Stamp stated that he did not know of any reason that it could not have been conducted immediately, except that “[n]ormally, we don’t receive the administrative investigation until the criminal is complete. I believe that may have been the reason in this particular case.”
The criminal investigation of Hollins and Clark, conducted by Sgt. Lorenzo of the NOPD Sex Crimes Unit, was turned over to the Orleans Parish District Attorney’s Office for review and determination of criminal charges on August 28, 2009. However, the record does not reflect when PIB determined that the criminal investigation of Hollins and Clark was complete, for purposes of beginning the administrative investigations. There is nothing to indicate when the administrative investigations of Hollins or Clark were conducted or completed. Sgt. Stamp’s administrative investigation of Liang for rule violations stemming from his supervisory shift on June 30, 2009 into July 1, 2009, began in March, 2011. At I,,that time,[5] Sgt. Stamp interviewed Liang about his duties and activities during his shift on June 30, 2009 into July 1, 2009. In the course of that interview, Sgt. Stamp determined that Liang did not collect the trip sheets for Hollins and Clark at the end of their shift on the date of the incident and Liang failed to correct the payroll records when he became aware that Hollins and Clark left work before the end of their shift. Upon gathering this information, Sgt. Stamp completed his administrative investigation of Liang on April 11, 2011, nearly two years from the date of Liang’s alleged violations. Liang received his disciplinary letter, informing him of his suspension and demotion, on August 8, 2011, more than two years from the initiation of the DI-1 investigation.
*1227 The NOPD argues that the administrative investigation of Liang arose within the context of a criminal investigation and, therefore, the sixty day time limitation for completing administrative investigation was tolled pending the completion of the criminal investigation. The NOPD points to the language of the statute which states, “nothing in this Paragraph shall limit any investigation of alleged criminal activity.” La. R.S. 40:2531 B(7). The NOPD also relies on the Louisiana Supreme Court’s decision in O’Hern v. Dept. of Police, 13-1416 (La.11/8/13), 131 So.3d 29, to argue that an administrative investigation can never under any circumstances take preference over a criminal investigation, regardless of whether or not the officer facing administrative investigation is the subject of the criminal investigation tolling the time limitation.
Upon our de novo review, we do not find support for the NOPD’s broad, far-reaching interpretation of La. R.S. 40:2531 B(7) and the Louisiana Supreme | ^Court’s decision in O’Hem. The O’Hem decision concerns the statutory language at issue in this ease but only in the context of an officer who was the subject of both a criminal investigation and an administrative investigation. Neither the Louisiana Supreme Court nor this Court has addressed whether the sixty day time limitation within La. R.S. 40:2531 B(7) may be tolled for an unlimited time pending any investigation of criminal activity that does not involve or implicate the officer subject to administrative investigation for rule violations.
Under the particular facts and circumstances in O’Hem, the Louisiana Supreme Court held that the administrative investigation of the officer was tolled by the investigation of the officer’s alleged criminal activity, pursuant to the language in La. R.S. 40:2531 B(7), stating that nothing shall limit the investigation of alleged criminal activity. O’Hern, 13-1416, p. 7, 131 So.3d at 33. In that case, Officer O’Hern was the subject of both a criminal and administrative investigation into his activities while on duty. The NOPD Public Integrity Bureau initiated a DI-1 investigation of possible criminal activity and administrative rule violations by O’Hern stemming from an incident and complaint received on December 12, 2009. O’Hern, 13-1416, p. 1, 131 So.3d at 30. On that date, O’Hern left his patrol assignment, drove his private vehicle to a downtown parking garage, consumed a bottle of whiskey and ingested several prescription drugs, tasered himself and discharged his firearm over twenty times, causing property damage to other vehicles. Id. The NOPD initiated a DI-1 disciplinary investigation and a criminal investigation of O’Hern’s actions on that night. The criminal investigation of O’Hern was completed and turned over to the State on January 26, 2010, to determine whether criminal charges would be filed against O’Hern. See O’Hern v. Dept. of Police, 12-0600, p. 2 (La.App. 4 Cir. 12/19/12), 111 So.3d 1037, 1038. 113On March 5, 2010, PIB began the administrative investigation of O’Hern’s alleged rule violations by sending notice to O’Hern compelling an administrative statement regarding his actions on the night in question. O’Hern, 13-1416, p. 1, 131 So.3d at 30. An administrative interview was conducted on March 11, 2010, and, on April 27, 2010, O’Hern received notice of the completion of the disciplinary investigation, the recommended disposition, and notice of the pre-disciplinary hearing. Id. Soon thereafter, O’Hern received his disciplinary letter from the NOPD informing him that he was being terminated as a result of the sustained rule violations.
In reviewing the facts of O’Hem in light of the provisions of La. R.S. 40:2531 B(7), the Louisiana Supreme Court determined that the criminal investigation of O’Hern’s *1228 actions tolled the time limit for the administrative investigation of his possible rule violations. O’Hem, 13-1416, pp. 4-5, 131 So.3d at 31. The Court found that the administrative investigation did not begin until March 5, 2010, when the NOPD notified O’Hern that he would be compelled to provide an administrative statement. Id. Once the administrative investigation began, the investigation complied with the time limitation standards set forth in the statute.
Comparing the facts and circumstances of O’Hem to the instant case, we find several significant distinctions. Under the circumstances in O’Hem, an administrative statement could not be compelled from the officer because any such statements from him could interfere, potentially, with the criminal investigation into his actions and be admissible in a criminal proceeding against him. See La. R.S. 40: 2531 B(5). Under the facts of this case, however, there was nothing precluding the NOPD from compelling an administrative statement from Liang or | ^proceeding immediately with an administrative investigation of Liang’s alleged rule violations. At the Commission hearing, Sgt. Stamp testified that there was not “anything to stop or prevent [the investigation] from being done immediately[.]” upon receiving information that formed the basis of the allegations — Clark’s statement that he left work before the end of his shift. Sgt. Stamp’s testimony also supports the finding that the administrative investigation of Liang would not interfere with the criminal investigation of the other two officers.
MR. HESSLER: And, in fact, an administrative statement if taken from and compelled during an administrative investigation of Sergeant Liang could have been compelled; correct?
SGT. STAMP: Yes, sir.
MR. HESSLER: And it could have been used against Officer Hollins; correct?
SGT. STAMP: I guess it could have possibly been, yes, sir.
MR. HESSLER: Okay. Because it’s not against — he’s not criminally inculpating himself, he is giving an administrative statement?
SGT. STAMP: Not at all.
MR. HESSLER: It can’t be used against him in a criminal action, but it can be used against anybody else; correct?
SGT. STAMP: His administrative statement?
MR. HESSLER: Tail take witness! statements all the time? SGT. STAMP: Yes, sir.
MR. HESSLER: And if a witness’ statement is taken and you see that there is administrative violations you begin an administrative investigation as soon as you observe the violation; correct?
SGT. STAMP: Yes, sir.
MR. HESSLER: That wasn’t done here, was it?
SGT. STAMP: In the investigation, no, sir, it was not.
I ^Sgt. Stamp testified that “normally” an administrative investigation does not begin until the criminal investigation is complete, but the NOPD failed to offer any evidence or testimony to show when the criminal investigation of Hollins and Clark was deemed complete. The record in this case reflects only that the criminal investigation was presented to the Orleans Parish District Attorney’s Office on August 28, 2009. The NOPD failed to offer any factual basis to support the delay of Liang’s administrative investigation until March, 2011.
*1229 By contrast, in O’Hem, the NOPD presented facts to support the deferral of the administrative investigation until the completion of the criminal investigation. The Louisiana Supreme Court noted,
At the [Commission] hearing, Sgt. Jones testified that because of the incriminating circumstances of the incident, a criminal investigation was required prior to an administrative investigation to determine whether Officer O’Hern was to be prosecuted by the District Attorney. Based on the criminal investigation conducted by Sgt. Jones, Mr. O’Hern was arrested and, upon release, was placed on desk duty by the NOPD so that the administrative investigation could begin. Therefore, it is clear that the administrative investigation did not begin until March 5, 2010, when the NOPD informed Mr. O’Hern that his statement was required to initiate the administrative investigation.
O’Hern, 13-1416, p. 4, 131 So.3d at 31. Ultimately, the Louisiana Supreme Court held in O’Hem that, “[b]ecause the statute specifically provides that nothing shall limit an investigation involving alleged criminal activity, the sixty-day period within which to complete an investigation did not begin until the start of the administrative investigation, and was completed within sixty days.” 13-1416, p. 7, 131 So.3d at 33.
The Louisiana Supreme Court relied on this holding again in McMasters v. Dept. of Police, 13-2634 (La.2/28/14), 134 So.3d 1163, but, there again, the |1fiofficer’s administrative investigation was tolled by the criminal investigation into his own actions. In McMasters,[6] PIB initiated a DI-1 investigation of alleged criminal activity and rule violations on November 23, 2009. McMasters did not receive notice of his pre-disciplinary hearing until February 16, 2011. After a hearing, the NOPD sustained multiple violations against McMasters and terminated him. The Commission denied his appeal and upheld the discipline imposed. In his appeal of the Commission’s decision, this Court found that the Commission erred in its ruling by not overturning the NOPD’s discipline for failure to comply with the sixty day time limit for administrative investigations as required by La. R.S. 40:2531 B(7). See McMasters v. Dept. of Police, 13-0348, p. 2 (La.App. 4 Cir. 10/9/13), 126 So.3d 684, 686. We considered and rejected the NOPD’s argument that the criminal investigation of McMas-ters tolled the sixty day time limit, reasoning that “‘to read the statute as the NOPD argues would completely eviscerate it; that is, to adhere to the NOPD’s argument would disembowel the Police Officer’s Bill of Rights.’ ” Id., 13-0348, p. 11, 126 So.3d at 691 (quoting Robinson v. Dept. of Police, 12-1039, p. 13 (La.App. 4 Cir. 1/16/13), 106 So.3d 1272, 1279). Consequently, we reversed the Commission’s decision and reinstated McMasters to his prior position.
The Louisiana Supreme Court reversed this Court’s decision in McMasters, relying wholly on their recent decision in O’Hem. “The investigation into Mr. McMasters’s conduct was clearly an investigation of alleged criminal activity. Therefore, the sixty-day time period of La. R.S. 40:2531 does not apply pursuant to our holding in O’Hern.” McMasters, 13-2634, p. 1, 134 So.3d at 1164. In both | ^O’Hem and McMasters, the officer appealing the discipline imposed due to violation of the minimum standards is the same officer investigated for allegations of criminal activity.
*1230 Under the particular facts and circumstances of the instant case, there are no allegations of criminal activity against Liang and, furthermore, his alleged rule violations bore no substantial relationship to the investigation of criminal activity by the other officers. This case is uniquely distinguishable from O’Hem and McMas-ters and we find the holdings in those cases inapplicable to the instant case.
The allegations against Liang involved his failure to supervise his subordinates by failing to collect their trip sheets at the end of the shift and failing to correct the payroll records once it was brought to his attention that the officers failed to complete their shift. Liang’s rule violations are wholly unrelated to the criminal conduct of Hollins. These particular rule violations could arise from any shift in which a supervisor fails to collect trip sheets or fails to conduct roll call as a means of ensuring all officers complete their shifts. If no allegations of criminal activity stemmed from that shift but Liang had still violated procedure by failing to collect trip sheets and failing to correct payroll records for subordinates who left their shifts early, then Liang would be subject to a disciplinary investigation for the same rule violations, which would have to comply with the sixty-day time period. Liang’s rule violations were not connected to the criminal acts that occurred during that shift.
If, as the NOPD argues, any criminal investigation involving any officer creates a tolling period that can affect any administrative investigation of a separate officer, then the minimum standards set forth in La. R.S. 40:2581 B(7) |1Rwould be gutted. The NOPD did not provide notice that the administrative investigation was tolled indefinitely due to its potential impact on the investigation of alleged criminal activity. Nor does the record of this case reflect any objective reason for the two year delay. The NOPD did not argue or make any showing that the criminal investigation into Hollins and Clark bore a substantial relationship to the administrative investigation of Liang or that proceeding with the administrative investigation of Liang would interfere with the criminal investigation. Sgt. Stamp’s testimony reveals that the two investigations were unrelated and there was no objective reason that the administrative investigation of Liang was delayed for two years.
Absent a correlation between the administrative investigation of Liang and the criminal investigation of Hollins and Clark, such that the former would in any way interfere with the latter, we do not find that the exception to the sixty-day time limit in La. R.S. 40:2581 B(7) applies. We, therefore, conclude that the NOPD violated the minimum standards set forth in La. R.S. 40:2531 B(7) by exceeding the sixty day time limit for completing the administrative investigation of Liang. Consequently, in accord with the further provisions of La. R.S. 40:2531(0,[7] the NOPD’s failure to comply with the minimum standards of the Police Officer’s Bill of Rights renders the discipline imposed an absolute nullity.
^CONCLUSION
For the foregoing reasons, we find the Commission erred in denying Liang’s ap *1231 peal and upholding the discipline imposed by the NOPD.[8] We reverse the decision of the Commission and render the discipline imposed by the NOPD an absolute nullity.
REVERSED AND RENDERED.

. According to the police report of this incident, Officer Hollins ran the name the female complainant gave to the officers, at 11:55 *1223 p.m. on June 30, 2009. Officer Clark later stated to investigators that the officers took her into custody with the intention of questioning her at the station. Neither Officer Hollins nor Officer Clark reported to dispatch that the female had been taken into custody.

. Sgt. Lorenzo prepared the criminal police report that was entered into evidence at the Commission hearing.

. Ultimately, Henry Hollins was charged by the State and convicted of attempted aggravated rape and second degree kidnapping. See State v. Hollins, 11-1435 (La.App. 4 Cir. 8/29/13), 123 So.3d 840. No criminal charges were filed against Officer Thomas Clark. Following an administrative investigation, the NOPD sustained three violations against Clark — Instructions from an Authoritative Source to wit Prisoner Transportation; Professionalism; and Ceasing to Perform Before End of Tour of Duty — and, as a result, the NOPD terminated Clark. After a hearing and review, the Commission denied Clark's appeal of the termination. In Clark v. Dept. of Police, 12-1274 (La.App. 4 Cir. 2/20/13), — So.3d —, 2013 WL 633073, this Court found that the NOPD had failed to carry its burden of proof that Clark's violations bore a real and substantial relationship to the efficient operation of the NOPD to support the discipline of termination. This Court held that the Commission erred in affirming the discipline imposed by the NOPD and the Commission’s decision to uphold the discipline was arbitrary and capricious. Ultimate *1224 ly, this Court reversed the Commission’s decision in part, finding that the punishment of termination was not commensurate with the violations proven, reinstated Officer Clark, and reduced the discipline to a 30-day suspension. Id.

. From the initiation of the DI-1 investigation until he received notification of the discipline, Liang maintained his status as a Sergeant and he continued to work as the supervisor of the Sixth District Task Force.

. Nothing in the record indicates the exact date Sgt. Stamp interviewed Liang. Sgt. Stamp testified only that it was in March, 2011.

. We draw the following facts of the case from this Court’s decision in McMasters v. Dept. of Police, 13-0348 (La.App. 4 Cir. 10/9/13), 126 So.3d 684, which reviewed the facts of the case in greater detail than the Louisiana Supreme Court’s subsequent decision. '

. La. R.S. 40:2531(C) provides, There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

. Finding merit in Liang’s first assignment of error, we pretermit any discussion of the remaining assignments of error.