JUDGE SANDRA CABRINA JENKINS
hShewanda Milton appeals the decision of the Civil Service Commission of the City of New Orleans (“the Commission”) denying her appeal and upholding her termination by the Department of Public Works (“DPW”). For the reasons that follow, we *827 find the Commission’s decision was not arbitrary, capricious, or an abuse of discretion, and we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
At the time of her termination, Shewan-da Milton had been employed by DPW for nine years. For the last six or seven of those years, Ms. Milton worked as a senior parking control officer (“PCO”), whose primary duty is issuing citations to illegally parked vehicles. As a part of her job, Ms. Milton was required to carry a DPW-issued cell phone to access the Verrus parking payment application and verify whether a driver paid for parking by phone or internet prior to issuing a citation for a parking meter violation.
On July 11, 2018, Ms. Milton worked from 9:00 a.m. until approximately 12:00 p.m., when she ended her shift early due to rain. During her three-hour shift, |aMs. Milton issued thirty-three parking citations, of which twenty-one were parking meter violations. At the end of that day, DPW directed all PCOs to turn in their department cell phones to a supervisor for inspection. When Ms. Milton’s supervisor, Valerie Petty, requested Ms. Milton to turn in her department cell phone, Ms. Milton admitted that she did not have it with her and had not used it during her shift that day.
The next day, July 12, 2013, DPW issued a disciplinary notice to Ms. Milton placing her on a thirty-day emergency suspension for violation of departmental rules and regulations on July 11, 2013. The notice cited the following violations: failure to report to work with her required department cell phone; failure to safeguard her departmental equipment; issuing fraudulent tickets without proper verification through the Verrus application; and making false statements on citations that a required phone verification had been made. The notice also informed Ms. Milton that additional discipline, including termination, could be imposed following a full investigation of the matter.
On October 17, 2013, DPW issued a notice of termination to Ms. Milton that detailed the findings from its investigation and pre-termination hearing.[1] During the course of the investigation, DPW reviewed all citations issued by Ms. Milton on July 11, 2013, and determined that Ms. Milton issued seven citations stating “no pay slip/no pay by phone” to drivers who had properly paid for their parking using |3the Verrus payment application. At the pre-termination hearing, Ms. Milton admitted that she violated departmental policies by failing to carry her department cell phone and failing to follow proper protocol once she realized she did not have her department cell phone. Ms. Milton then claimed that she had used another PCO’s department cell phone and her own personal cell phone to check the Verrus payment application before issuing all citations for parking meter violations. In response to the finding that she issued seven citations improperly, Ms. Milton suggested that the Verrus application was not functioning correctly or provided incorrect information. In its investigation, however, DPW determined that there were no records or reports of any technical problems with the Verrus application on July 11, 2013. Based on its review of Ms. Milton’s actions on July 11, 2013, DPW found Ms. Milton violated several departmental rules and Civil Service Rule IX, Section 1.1, regarding maintaining the standards of effective ser *828 vice, and concluded that termination was warranted.
Ms. Milton timely appealed her termination by DPW to the Commission. On February 3, 2015, a hearing was held before an appointed Hearing Examiner. Three witnesses, including Ms. Milton, testified at the hearing.
Ms. Petty, a Parking Control Supervisor, testified that she was Ms. Milton’s immediate supervisor at the time of the incident on July 11, 2013. Ms. Petty stated that Ms. Milton’s job as a senior PCO required her to patrol her assigned area and determine whether vehicles were parked illegally based on posted signage and meter payments. For vehicles parked in metered zones, Ms. Petty explained that |4PCOs must follow a certain procedure to verify whether there is a meter violation before issuing a citation. First, a PCO checks whether the meter is expired or whether the pay slip on the dashboard of the vehicle is expired; then, the PCO must access the Verrus application on her department cell phone to check whether a payment had been made for the metered space by phone or internet; if the Verrus application indicates no meter payment, only then can a PCO issue a citation for a meter violation.[2] Ms. Petty testified that all PCOs are issued a department cell phone, to be used exclusively for accessing the Verrus application during shifts, and that Ms. Milton was aware of the DPW procedures requiring the use of the Verrus application to verify parking meter violations.
Regarding the incident involving Ms. Milton on July 11, 2013, Ms. Petty testified that on that day all supervisors were directed to retrieve the department cell phones from their PCOs to inspect whether any unauthorized programs had been downloaded onto the phones. When she requested Ms. Milton turn in her department cell phone, Ms. Petty recalled that Ms. Milton started looking through her belongings for the phone; after a few minutes, Ms. Milton stated that she must have left it in the hotel where the PCOs take breaks. Ms. Petty then told Ms. Milton that they should go back to the hotel to find the department cell phone; as they were leaving the office together, Ms. Milton admitted to Ms. Petty that she left her department cell phone at home and did not have it with her during her shift |Kthat day. Ms. Petty testified that she did not ask Ms. Milton any further questions, and she reported the matter to her supervisor.
Zepporiah Edmonds, the Parking Administrator, testified that she is responsible for investigating any reported violations of departmental policies and procedures, making recommendations to the Parking Director regarding disciplinary action that may be warranted, and imposing any disciplinary action that the Director approves. Regarding the incident on July 11, 2014, Ms. Ed-monds testified that she was informed through the chain of command about Ms. Milton’s infraction that day.[3] She stated that Ms. Milton’s infraction—her failure to carry her department cell phone during her shift—involved a failure to perform her duties properly, failure to safeguard City-owned departmental equipment, and possibly involved fraudulent activity related to entering *829 false information on public documents. Ms. Edmonds stated that the possibility of fraudulent activity stemmed from the fact that PCOs were required to verify meter violations through the Verrus application on their department cell phones and indicate on the issued citation that such verification had been made. Due to the serious nature of Ms. Milton’s infraction, Ms. Edmonds concluded that an emergency thirty-day suspension of Ms. Milton was appropriate, pending a full investigation.
Ms. Edmonds testified that during the course of her investigation into Ms. Milton’s actions, a staff member was assigned to work directly with a Verrus | (¡program manager and review all citations issued by Ms. Milton on July 11, 2013. The review found seven citations issued by Ms. Milton to drivers who had properly paid for parking through the Verrus application. In addition, the Verrus system showed that no license plate/payment verification queries had been made with any department cell phone prior to those citations being issued. Ms. Edmonds also stated that the staff member and the Verrus program manager checked whether the Verrus application experienced any problems or outages on July 11, 2013, and found no indication of any problems. Based on these findings, Ms. Edmonds determined that a pre-ter-mination hearing was necessary to afford Ms. Milton the opportunity to present her side of the case. Ms. Edmonds stated that Ms. Milton testified at the hearing but she did not offer a plausible explanation to counter the findings of the investigation. Specifically, Ms. Edmonds found that Ms. Milton’s claims—that she used a co-worker’s department cell phone and her own personal cell phone to access the Verrus application and that any improperly issued citations were the result of a problem with Verrus—were not supported by the evidence.
After the pre-termination hearing, Ms. Edmonds recommended to the Parking Director that Ms. Milton be terminated. Ms. Edmonds testified that Ms. Milton’s actions on July 11, 2013 impacted the efficient operation of DPW because her actions tarnished the credibility of the parking program, adversely affected citizens who had paid for parking but received improper citations, and caused DPW to devote extra time to review and correct the issues related to those citations.
|7On cross-examination, Ms. Edmonds acknowledged that Ms. Milton had been employed at DPW since 2004 and she was not aware of any other disciplinary action taken against Ms. Milton. Regarding the Verrus application, Ms. Edmonds agreed that it was not a perfect program and, occasionally, DPW experienced operational problems with Verrus. While she acknowledged that a person could use a personal cell phone to check whether a parking payment had been made to Verrus, Ms. Edmonds stated that PCOs were required to use their department cell phones to access the Verrus application, so that a parking payment query could be tracked back to a department cell phone. Ms. Ed-monds testified that she could not be certain whether Ms. Milton had used her personal cell phone to check the Verrus application. However, Ms. Edmonds reiterated that Ms. Milton had issued seven citations to citizens who had in fact paid for parking through the Verrus application and, therefore, Ms. Milton’s actions involved entering false information on citations.
Ms. Milton testified that on July 11, 2013, she did not realize that she did not have her department cell phone until she reported to her patrol area. Ms. Milton stated that she attempted to contact her supervisor to tell her that she did not have *830 her department cell phone, but her supervisor did not answer the radio. She also stated that she could not contact dispatch because it was a street cleaning day and PCOs were told not to call dispatch during street cleaning. Ms. Milton admitted that she proceeded with her shift without her department cell phone and issued thirty-three citations during that shift. She stated that she verified all citations |sthrough the Verrus application by borrowing a fellow PCO’s department cell phone for part of her shift and then using her personal cell phone for the duration. She stated that a personal cell phone could be used in the same manner as the department cell phone to access the Verrus application and check whether a payment had been made by entering either the vehicle license plate or the meter number.
Ms. Milton testified that she did not issue any citations that day without verifying whether a payment had been made through Verrus. She acknowledged that seven of the citations she issued on July 11, 2013, were found to be invalid because parking payments had been made through Verrus. Ms. Milton stated that she had experienced problems with the Verrus application in the past in which citations were incorrect and had to be thrown out when citizens disputed them. Offering possible explanations for the invalid citations, Ms. Milton stated that there can be a time lapse between a payment being made and showing up on the Verrus application; or if a driver moves the vehicle from one meter zone to another then a query of the meter number would not show payment; or sometimes a license plate query just did not show that a payment had been made.
In rebuttal to Ms. Milton’s testimony, DPW recalled their two witnesses. Ms. Petty testified that she carried her department radio with her at all times and she did not receive a radio call from Ms. Milton on the day of the incident. Regarding Ms. Milton’s testimony that she could not contact dispatch, Ms. Petty testified that PCOs were told not to contact dispatch for a tow request during street ^cleaning hours on Tuesdays and Thursdays, but they could report other problems to dispatch at any time. Ms. Edmonds then testified that it was “quite unusual” for a PCO to issue seven invalid citations during a shift, and, given Ms. Milton’s testimony that she only worked for three hours that day, Ms. Edmonds stated that seven invalid citations was “very high,”
After the Commission hearing, the Hearing Examiner prepared a report for the Commission concluding that DPW had established legal cause for its termination of Ms. Milton and recommending that Ms. Milton’s appeal be denied. Subsequently, on February 24, 2016, the Commission issued its decision denying Ms. Milton’s appeal and upholding her termination by DPW.
Ms. Milton now appeals the Commission’s decision.
STANDARD OF REVIEW
An employee who has gained permanent status in the civil service shall not be subjected to disciplinary action by his or her appointing authority except for cause expressed in writing. La. Const. Art. X § 8. An employee also has the right to appeal any disciplinary action imposed by the appointing authority to the Commission. Id. On appeal to the Commission, the appointing authority must establish sufficient, legal cause for the disciplinary action by proving that the employee’s complained-of dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Clark v. Department of Police, 12-1274, pp. 4-5 (La.App. 4 Cir. 2/20/13), 155 So.3d 531, 534, citing Cure v. Department of Police, 07-0166, p.2 *831 jin(La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094. The Commission must decide independently from the facts presented whether the appointing authority had legal cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Whitaker v. New Orleans Police Dept., 03-0512, p. 2 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 574, citing Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 113 (La. 1984).
The Commission’s decision is then subject to appellate review on any question of law or fact. La. Const. Art. X § 12. As to the Commission’s findings of fact, the appellate court applies the manifest error standard of review. Adams v. Department of Police, 08-0468, p. 3 (La. App. 4 Cir. 2/12/09), 7 So.3d 763, 765, citing Cure, supra. In reviewing the Commission’s determination as to whether the disciplinary action was based on legal cause and whether the punishment is commensurate with the dereliction, the appellate court should not modify the Commission’s decision unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id; Clark v. Department of Police, 12-1274, p. 5 (La.App. 4 Cir. 2/20/13), 155 So.3d 531, 535, citing Cure, supra. “‘Arbitrary or capricious’ means the absence of a rational basis for the action taken.” Bannister v. Department of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647, citing Shields v. City of Shreveport, 579 So.2d 961 (La. 1991).
DISCUSSION
In her appeal of the Commission’s decision, Ms. Milton does not challenge the Commission’s finding that DPW had legal cause for taking disciplinary action. |nIn her sole assignment of error, Ms. Milton argues that the Commission erred in concluding that termination was commensurate punishment for her dereliction. Ms. Milton asserts that termination is an unreasonable and excessive punishment that was based solely on the incident of July 11, 2013 without consideration of her otherwise unblemished nine-year work history at DPW.
While the Commission and this Court both have authority to modify, reverse, or affirm punishment imposed by the appointing authority, neither is charged with the discipline of civil servants. See Clark, 12-1274, p. 4, 155 So.3d at 534; Pope v. New Orleans Police Departmenti 04-1888, pp. 5-6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4; see also, La. Const. Art. X § 12. “The appointing authority is charged with the operation of its department, and it is within its discretion to. discipline an employee for sufficient cause.” Clark, 12-1274, p. 4, 155 So.3d at 534. “ ‘Cause’ for the dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation.” Department of Public Safety and Corrections, Office of State Police v. Mensman, 95-1950, p. 4 (La. 4/8/96), 671 So.2d .319, 321. When there is no dispute that .the employee engaged in conduct prejudicial or detrimental to the efficient operation of the appointing authority, then this Court should not reverse the Commission’s decision affirming the punishment imposed unless the decision is arbitrary or capricious, in that it lacks any rational basis under the circumstances of the case.
| ^Although Ms. Milton does not dispute that DPW had legal cause to take disciplinary action, we note that the Commission’s decision included a thorough discussion of the testimony and evidence upon which it based its determination that the *832 DPW had established legal cause for the disciplinary action taken. The Commission made several factual findings related to Ms, Milton’s misconduct on July 11, 2013, as follows: Ms. Milton admittedly violated DPW policy by failing to have her department cell' phone with her during her shift on July 11, 2013; Ms. Milton did not attempt to contact her supervisor or dispatch to report that she did not have her phone; Ms. Milton issued, all twenty-one meter violation citations (of which seven were found invalid) without verifying whether payment had been made through the Verrus application; Ms. Milton initially tried to mislead her supervisor regarding the whereabouts of her department cell phone and only revealed the truth when forced to do so; no other PCO reported a problem with the Verrus application on July 11, 2013; the Verrus program managers did not find any prtiblems with the system on that date; no department cell phone was used to conduct a Verrus payment query for any license plate associated with the seven invalid citations issued by Ms. Milton; and seven invalid tickets issued by one PCO in a three-hour period is very unusual. In making these findings, the Commission questioned Ms. Milton’s credibility several times, noting her “dubious” explanations for not contacting her supervisor or dispatch, her doubtful claims that she used another PCO’s department cell phone, and her “unbelievable” explanation for the seven invalid tickets. Based on our review of the record, we 11scannot say that these credibility determinations and findings by the Commission are clearly contrary to the evidence. See Pearson v. Department of Police, 09-0725, p. 8 (La. App. 4 Cir. 11/12/09), 26 So.3d 264, 268 (“Unless clearly contrary to the evidence, credibility determinations are within the discretion of the trier of fact and will not be disturbed by the reviewing court.”).
The Commission also discussed how the DPW had satisfied its burden to establish that Ms. Milton’s misconduct impaired the efficiency of the department. The testimony of Ms. Edmonds established that extra work had been devoted to reviewing all citations issued by Ms. Milton on the day of the incident, further work was necessary to rescind those invalid citations, and that Ms. Milton’s misconduct in issuing unverified, invalid citations diminished the reputation and credibility of the parking program. The Commission also found that Ms. Milton’s misconduct adversely impacts the ability of the DPW to successfully implement parking programs by sowing distrust and frustration among citizens. Upon our review of the record, we find no manifest error in the findings that led to the Commission’s determination that DPW satisfied its burden of proving the legal cause for taking disciplinary action against Ms. Milton.
In making the determination that Ms. Milton’s termination was a commensurate disciplinary action for her offense, the Commission first noted that Ms. Milton failed in her primary responsibility as a PCO to faithfully enforce parking regulations, thereby harming those citizens who properly paid for parking and disadvantaging the citizens, businesses, and the City for whom those parking | ordinances are in place to benefit. The Commission then stated that Ms. Milton “compounded her misconduct by lying about it, first to her immediate supervisor, then during her pre-termination meeting and finally to the Hearing Examiner,” Finally, the Commission found that termination was warranted in this case based on Ms. Milton’s dereliction of duties on July 11, 2013, in combination with her deceitful attempts to cover up her infractions.
Upon review, we find the Commission’s decision to uphold Ms. Milton’s termi *833 nation is rationally based on the facts established in this record. Although DPW did not present evidence of previous disciplinary action taken against Ms. Milton, the record reflects that Ms. Milton’s misconduct involved fraudulent actions on July 11, 2013, and deceitful attempts to excuse and cover up her infractions. While we acknowledge that termination from permanent employment is the most severe form of disciplinary action taken against a civil servant, we cannot say that the Commission’s decision to uphold termination in this case was arbitrary, capricious, or an abuse of discretion.
CONCLUSION
For the foregoing reasons, we affirm the decision of the Commission denying Ms. Milton’s appeal and upholding her termination by DPW.
AFFIRMED

. During the thirty-day suspension period, DPW extended Ms. Milton’s suspension through October 2013 to allow more time to complete the investigation and conduct the pre-termination hearing,

. The Verms application allows PCOs to verify meter payments by entering the vehicle’s license plate and the meter location.

. Ms. Edmonds stated that she received a report from Jerry Conner, the Parking Section Manager at that time, who had been made aware of the situation by Betty Solomon, the Field Operations Supervisor and Ms. Petty’s supervisor. By the date of the hearing, Mr. Conner and Ms. Solomon had retired.