JAMES F. MCKAY III, GHIEF-JUDGE
11 Sergeant Irma Regis (“Sgt. Regis”) seeks review of the decision of the Civil Service Commission (“CSC”), denying her appeal of the discipline imposed by the New Orleans Police Department (“NOPD”). For the reasons set forth below, we affirm in part and reverse in part.
FACTUAL AND PROCEDURAL BACKGROUND
• At the time of the actions that form the basis for the complaint, Sgt. Regis was employed by the NOPD as a police officer with permanent status. On March 21, 2011, Officer Lawrence Fortuna (“Officer'Fortu-na”) conducted a traffic stop that resulted in the arrest of the driver. Officer Fortuna maintains that the subject could not produce a driver’s license, so he was ordered out of the car. Upon exiting the vehicle, Officer Fortuna claims that the subject pushed him and ran from the scene. After a brief chase, Officer Fortuna brought the subject to the ground and handcuffed him. Officer Jamal Kendrick (“Officer Kendrick”) was also on the scene, and witnessed the incident.
Officer Fortuna brought the subject to the station, where he began preparing the gist of the incident. Because Officer Fortu-na was a relatively new officer, he enlisted the help of Sergeant Michael Stalbert (“Sgt. Stalbert”), Officer Kendrick, Land Officer Marsha Thompson (“Officer Thompson”). Initially, the gist included charges for firearm violations, resisting arrest, and battery on a police officer. The narrative of the gist stated that when the subject fled the scene, a brief struggle ensued. Officer Fortuna presented the gist to Sgt. Regis for her signature. However, according to Officer Fortuna, Sgt. Regis refused to sign the gist and instructed him to remove the battéry on a police officer charge and any mention of the struggle. Officer Fortuna complied, and Sgt. Regis signed the amended gist.
The following day, Officer Fortuna informed Sergeant Kristi Bagnéris (“Sgt. Bagneris”) that Sgt. Regis had instructed him to remove information from the gist. Sgt. Bagneris instructed Officer Fortuna to write a second report, and add back the charge relative to battery on a police officer. Officer Fortuna prepared the second gist, which included the battery on a police officer charge and a description of the physical. altercation between the subject and Officer Fortuna. Sgt. Bagneris signed the gist.
Sgt. Bagneris reported the incident to Lieutenant Aaron Blackwell (“Lt. Blackwell”), who conducted an., inquiry. Lt. Blackwell learned from his interview with Officer Fortuna that Officer Fortuna explained the details of the arrest to Sgt. Regis, but that she advised him not to charge the arrested subject with- battery because Officer Fortuna was a probation *167 ary officer (new officer) and would have to take a urine test if use. of force, was reported. Lt. Blackwell further determined that Sgt. Regis did not complete the paperwork that is required when force is used in connection with an arrest.
An investigation of Sgt. Regis’s actions followed, and a DI-1 Form (Initiation of a Formal Disciplinary Investigation) was issued on March 23, 2011, alleging the following rule violations:
hi. Rule 4: Performance of Duty; Paragraph 4: Neglect of Duty, Section C: Subparagraph 4; Failing to . make a written report when such is indicated.
2. .Rule 6: Official Information, Paragraph 2: False or inaccurate reports.
3. Rule 4: Performance of Duty; Paragraph 2: Instructions from an authoritative source. To wit; Chapter 1.3 “Resisting Arrest Report;” Paragraph 1, Reporting use of force, Sub-paragraph 1; A “Resisting Arrest Report” SHALL be prepared ....
Sergeant André LeBlanc, Jr. (“Sgt. Le-Blanc”), with the Public Integrity Bureau, was assigned to the investigation. Sgt, Le-Blanc- took statements from Sgt. Bagneris, Sgt. Stalbert, Officer Fortuna, Officer Kendrick, Officer Thompson, and Sgt. Re-gis.
Sgt. Bagneris related to Sgt. LeBlanc that- she believed Officer Fortuna had probable cause to arrest the subject for battery on a police officer because it was articulated that the subject put hands on Officer Fortuna, which was a battery. Sgt. Bagneris further stated that she believed Sgt. Regis used Officer Fortuna’s status as a probationary officer as a reason not to report it and to avoid preparing the additional paperwork required when use of force is involved in an-arrest. -
In- his -statement to Sgt.- LeBlanc, Sgt. Stalbert explained that he assisted Officer Fortuna in the preparation of the gist. He stated that Officer Fortuna advised him that the subject was being charged with battery of a police officer, resisting arrest, illegal carrying of a firearm and illegal carrying of a firearm by a convicted felon. Sgt. Stalbert believed that Officer Fortuna had the necessary elements to support those charges. He acknowledged' that the gist clearly stated that Officer Fortuna had been pushed by the subject.
Officer Fortuna related to Sgt. LeBlanc how the subject pushed him and began to flee, and how the subject fought him -during the take down. Officer Fortuna further explained that when he presented the gist (which included the Rbattery charge) to Sgt. Regis, she told-him he was not supposed to do that type of report. When asked why not, Sgt. Regis stated that she would have to do a use of force report and that if he left those charges in the gist, Officer Fortuna would have to take a urinalysis. Officer Fortuna further stated that Sgt. Regis instructed him to take out the charges for battery on an officer and resisting arrest by flight from an officer. She also instructed him to take out the detail of the gist wherein he stated that a brief struggle ensued between himself and the subject.
Officer Kendrick confirmed in his statement to Sgt. LeBlanc that he was present during the traffic- stop, and that he saw the subject strike Officer Fortuna in the chest and begin to run. He further stated that when Officer Fortuna caught up with the subject, a struggle ensued. Officer Kendrick explained that he started to assist Officer Fortuna in preparing the gist, but that Sgt. Regis instructed him to get back out on the street. When he left the station, it was his understanding that the subject was -going to be arrested for battery on an *168 officer, resisting arrest by flight and the gun charges.
Officer Thompson stated that she arrived on the scene as the officers were securing the subject in the police car. At the station, she assisted Officer Fortuna with the charging and the content of the gist. Officer Thompson stated that prior to leaving the station, the components explaining how Officer Fortuna was battered were on the gist sheet. She further stated that the battery of Officer Fortuna was in the narrative of the incident report and the details were consistent with the details in the original gist, which she assisted in preparing.
Sgt. Regis provided a statement to Sgt. LeBlanc on June 3, 2011. She stated that when Officer Fortuna returned to the station after the arrest,' she noticed green stains on the back of his shirt. She asked him what happened, and he told her that | she had the guy by the car and the guy took off running. Officer Fortuna ran behind him. He caught the subject, they fell to the ground, and the subject was immediately handcuffed.
Sgt. Regis stated that when she read the initial gist, she asked Officer Fortuna if the subject committed a battery on him, to which he replied, no. She further stated that she only reviewed the gist sheet, not the incident report. Sgt. Regis maintained that there were no details of a battexy contained in the gist. This fact is disputed by Officer Fortuna, Sgt. Stalbert, and Officer Thompson and later contradicted by Sgt. Regis’s own testimony in her appeal to the CSC. In her statement to Sgt. Le-Blanc, she claims that she only instructed Officer Fortuna to remove the battery charge.
Sgt. Regis denied telling Officer Fortu-na that she should not complete a use of force report because he was a probationary officer. Sgt. Regis explained that because Officer Fortuna did not express that a battery had taken place, she told him that he would have to take that out of the gist. Otherwise, she told him, “you have to go get yo ‘P’ test, we’ll do a first report of injury and that’s it.”
Sgt. Regis stated that she did not speak with Officer Kendrick about the incident, and denied telling Officer Kendrick to go back out on the street. Sgt. Regis suggested that Officer Fortuna may have been coerced into providing information against her, although she did not elaborate.
Following the investigation, Sgt. Regis was demoted and ultimately terminated by letter dated January 30, 2012. The disciplinary letter sets forth the following, in pertinent part:
Regarding the violation of Rule 4: Performance of Duty, paragraph 2—In-structions from an Authoritative Source to wit: Chapter 1.3 Resisting Arrest Report, paragraph 1, sub-paragraph 1 Lwas recommended a Duplicate. Deputy Superintendent Albert further recommended an additional sustained violation of Rule 4: Performance of Duty, paragraph 4, Neglect of Duty, Section C Subparagraph 4—Failure to make a written repoi’t when such is indicated (Resting Arrest Report), which is the more applicable violation which should be classified as SUSTAINED.
Sergeant Regis as a police supervisor had the duty and responsibility to perform certain tasks when she was informed that force was used towards the officer and on the arrested subject by the officer. Sei-geant Regis neglected to properly supervise Officer Fortuna and failed to complete the necessary paperwork required when force is used. Instead she advised, and instructed Officer Fortuna to remove the mention of use of force and battexy of a police officer from *169 his gist of the arrest. This is a violation of Rule 4: Performance of Duty, paragraph 4, Neglect of Duty, Section C Subparagraph 4—Failing to make a •written report when such is indicated (Resisting Arrest Report).
As to the violation of Rule 6: Official Information, paragraph 2—False or inaccurate reports which was sustained in the original investigation. Deputy Superintendent Albert concurred with the investigator’s recommended disposition of Rule 6: Official Information, paragraph 2—False or inaccurate reports.
Sergeant Regis violated this rule when Officer Fortuna provided her the details of an arrest and also presented her with the gist for the arrest of the subject he was involved in a use of force incident with. Sergeant Regis instructed him to remove the details regarding the use of force incident causing or allowing a false or inaccurate report of an official nature to be recorded, or intentionally withholding material from such report, which is a violation of Rule 6: Official Information, paragraph 2—False or inaccurate reports.
The allegation of Rule 2: Moral Conduct, paragraph 3, Honesty and Truthfulness were found NOT SUSTAINED. However, Sergeant Regis was additionally SUSTAINED for Rule 2: Moral Conduct, paragraph 3, Honesty and Truthfulness. Because she stated that she only told Officer Fortuna to remove the charge of battery on a Police Officer from the gist. Sergeant Regis said she did this because the elements written in the gist did not justify the charge. The investigation revealed that Officer For-tuna wrote the justification in the gist before Sergeant Regis reviewed the gist. After reviewing the gist Sergeant Regis instructed him to take facts regarding use of force and battery on a police officer out of the police report. Sergeant Regis stated that the current gist in the report was the only gist she read. The only part of the gist she made the officer change was removing the charge of battery on a police officer, because she stated the facts of the gist did not support the charge. This fact is refuted by Officer 17Fortuna and was also observed in the gist by Sergeant Michael Stalbert and Officer Marcia Thompson. As such, you were not honest and truthful which is a violation of Rule 2: Moral Conduct, paragraph 3, Honesty and Truthfulness. [1]
⅜ ⅜ # ⅜
Therefore, in light of the above investigation, a review of any disciplinary record and due to the nature of your violations, you are hereby notified that for the sustained violation of Rule 4: Performance of Duty, paragraph 4, Neglect of Duty, Section C, subparagraph 4— Failing to make a written report when such is indicated “Resisting Arrest Report” (Second Offense), you are demoted to your last Civil Service Status. For sustained violation of Rule -2: Moral Conduct, paragraph 3, Honesty and Truthfulness, you are dismissed and for the sustained violation of Rule 6: Official Information, paragraph 2—False or inaccurate reports, you are dismissed from the New Orleans Police Department, effective Monday, January 30, 2012. (Emphasis in original).
Sgt. Regis appealed the disciplinary decision to the CSC. A Hearing Officer presided over the appeal, which was held on May 29, 2013, June 26, 2014, and August *170 21, 2014. Sgt. Regis, Officer Fortuna, and several other officers testified.'
In his testimony before the hearing officer, Officer Fortuna described, consistent with his previous statement, the physical altercation that occurred during the arrest. He reiterated that he was told by Sgt. Regis to remove the battery on a police officer charge as well as the verbiage that a brief struggle ensued. Additionally, he stated that Sgt.' Regis explained to him that he would have to take a urinalysis if the battery charge and information regarding the struggle were not omitted.
Sgt. Leblanc testified that in connection with his investigation of Sgt. Regis on behalf of the NOPD, he concluded that the arrest report contained false ^information because Officer Fortuna was instructed to remove certain details related to the battery on an officer and flight from an officer. He further stated that based on NOPD policy, and based on Officer Fortu-na’s use of force during the arrest, Sgt. Regis was required to prepare a use of force report.
Officer Thompson testified that she assisted Officer Fortuna in writing the incident report and gist. She stated that both the report and the gist provided details related to the battery on an officer and flight from an officer.
Officer Kendrick ’ testified that he saw the subject hit Officer Fortuna “maybe twice.” In his estimation, the subject’s actions constituted a battery. Officer Kendrick reiterated his prior statement that he was assisting Officer Fortuna in preparing his report, but was ordered back on the street by Sgt, Regis.
Sgt. Bagneris testified that Officer For-tuna expressed his concerns to her that Sgt. Regis instructed him to remove certain information from the gist, and not to include details about the use of force and the chase in the incident report. She instructed Officer Fortuna to- write a second report, in order to re-book the subject on the original charges of battery and flight from an officer.
Sgt. Stalbert testified that when Officer Fortuna entered the station after the arrest, he observed Officer Fortuna to be dirty. Officer Fortuna explained that -he had been involved in a scuffle during the arrest. Sgt. Stalbert reiterated that Officer Fortuna included a description of the scuffle in his initial report, ‘but that the language was removed per Sgt. Regis’s instructions. He further testified that it is never appropriate for a supervisor to instruct a subordinate officer to remove relevant charges from a police report. Sgt. Stalbert stated that he would have approved the initial gist prepared by Officer Fortuna.
^Deputy Superintendent Darryl Albert (“Chief Albert”) testified that he presided over the disciplinary hearing. In connection therewith, he recommended that Sgt. Regis’s violation of Rule 4, Performance of Duty, paragraph 4, Neglect of Duty, be sustained. He explained that Sgt. Regis violated Rule 4 because she neglected to properly supervise Officer Fortuna and failed to completó the required use of force paperwork. Chief Albert also determined that Sgt. Regis violated Rule 6, Official Information, paragraph 2, False or Inaccurate Reports, when she instructed Officer Fortuna to remove the details of the use of force incident. Concerning Rule 2, Moral Conduct, paragraph 3, Truthfulness, Chief Albert explained that the truthfulness charge was added after considering Sgt. Regis’s testimony at the disciplinary hearing. It was determined that Sgt. Regis violated this rule when she stated that she only told Officer Fortuna to remove the battery charge, because the gist did not support the charge. Chief Albert stated *171 that this fact was refuted by other officers who observed Officer. .Fortuna include the elements of the charge in the gist.
Lieutenant'Denise Miíes Thomas was the’ Commander of the Seventh Police District on the day in question. She testified that it is never appropriate for a Sergeant to instruct an officer to remove language regarding a struggle from a' gist if the officer claims that he was involved in a struggle during an arrest.
In her testimony before the hearing officer, Sgt. Regis stated that when she became aware that the gist included a battery charge, she asked Officer Fortuna to explain the battery, but he just shrugged his shoulders. She explained to Officer Fortuna that if he could not tell her what the battery was, he could not charge the subject with battery. She further testified that Officer Fortuna claimed that there was no struggle. She acknowledged, however, that she observed grass stains on | ^Officer Fortuna’s shirt. She was also aware that Officer Fortuna was involved in a “take down” maneuver during the arrest of the subject.
Sgt. Regis stated that she did not interview Officer Kendrick regarding the arrest because she did not know he was at the scene. However, she acknowledged that this information was contained in the gist that she signed.
The hearing officer issued a report on July 28, 2015, finding that the NOPD met its burden of proof and established .that Sgt. Regis was disciplined for cause. It was further determined that the NOPD established that the complained of conduct impaired the efficient operation of the department and that the penalties imposed were commensurate with the offenses. The hearing officer specifically noted in the report that Sgt. Regis’s testimony as to why she instructed Officer Fortuna to remove the battery charge to be self-serving and not credible.
In a ruling dated May 24, 2016, the CSC denied Sgt. Regis’s appeal, finding that “[t]he Appointing Authority met its burden of proof and established that [Sgt. Regis] was disciplined for cause and that the discipline imposed was commensurate with the infractions and in accordance with the Departmental disciplinary matrix.” Sgt. Regis’s timely appeal to this Court followed.
On appeal, Sgt. Regis asserts the following eight assignments of error:
1. The decision of the Civil Service Commission upholding the termination of Sgt. Regis was manifestly erroneous because the testimony established that Sgt. Regis did not violate NOPD policy whe,n she instructed Officer Fortuna to remove one phrase and two charges from the Gist of his Incident Report.
2. The decision of the Civil Service Commission upholding the demotion of Sgt. Regis was manifestly erroneous because even if.a use,of force form should have been submitted, the penalty of demotion for the Rule 4 violation exceeded the NOPD penalty schedule and was therefore excessive and in violation of NOPD policy.
In3. The decision of the Civil Service Commission .was manifestly erroneous because the appointing authority failed to comply with the Constitutional requirements enunciated by the Supreme Court in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
4. The decision of the Civil Service Commission was manifestly erroneous because the conclusions reached and the penalties imposed were arbi *172 trary, unreasonable and without any basis in fact or law.
5. The decision of the Civil Service Commission was manifestly erroneous because it erroneously found that the alleged actions of Sgt. Irma Regis violated the policies of the NOPD.
6. The decision of the Civil Service Commission was manifestly erroneous because it erroneously found that the alleged actions of Sgt. Irma Regis impaired the efficient operation of the public service.
7. The decision of the Civil Service Commission was manifestly erroneous because the NOPD erroneously imposed discipline that was not commensurate with the alleged infractions.
8. The penalty herein was excessive.
STANDARD OF REVIEW
In Honoré v. Dept. of Public Works, 14-0986, (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, this Court summarized the standard of review applicable to decisions of the CSC as follows:
The Louisiana Constitution Article 10, § 8 provides in pertinent part, “No person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing.” See Walters v. Department of Police of City of New Orleans, 454 So.2d 106 (La. 1984). A civil service employee subjected to disciplinary action by his or her appointing authority has the right of appeal to the Civil Service Commission. La. Const. Art. 10 §§ 8, 12; See, e.g., Adams v. Dept. of Police, 08-0468, p. 2 (La.App. 4 Cir. 2/12/09), 7 So.3d 763, 765. On appeal to the Commission, the Appointing Authority must prove by a preponderance of the evidence good or lawful cause for taking disciplinary action. See, e.g., Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094. Good or lawful cause for disciplinary action exists if the employee’s conduct impairs the efficient operation of the public service in which the employee is engaged. Bell v. Dept. of Police, 13-1529, p. 5 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 874 (quoting Pope v. New Orleans Police Dep't., 04-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 5). Thus, the Appointing Authority has the burden to prove, by a preponderance of evidence, that the act or infraction occurred and that such act or infraction bore a real and substantial relationship to the operation of the public service. Cure, 07-0166, p. 2, 964 So.2d at 1094.
The Commission must then determine independently from the facts presented whether the legal cause for disciplinary action has been established and, if so, whether that disciplinary action is commensurate with the employee’s detrimental conduct. See Bell, 13-1529, p. 5, 141 So.3d at 874-75. The Commission has the duty and authority to affirm, reverse, or modify the action taken by the Appointing Authority. Clark v. Dept. of Police, 12-1274, p. 4 (La.App. 4 Cir. 2/20/13), 155 So.3d 531, 534.
The final decision of the Commission is subject to review on any question of law or fact upon appeal to the court of appeal. La. Const. Art. 10 § 12; Cure, 07-0166, p. 2, 964 So.2d at 1094. The appellate court reviews the Commission’s findings of fact under a clearly wrong or manifest error standard of review. Cure, 07-0166, p. 2, 964 So.2d at 1094. In reviewing the Commission’s determinations of whether legal cause existed and whether the discipline is commensurate with the infraction, the *173 appellate court should not modify or reverse the Commission’s decision unless it is arbitrary, capricious, or characterized by an abuse of discretion. Clark, 12-1274, p. 5, 155 So.3d at 535; Ellis v. Dept. of Police, 10-0048, p. 6 (La.App. 4 Cir. 5/12/10), 38 So.3d 1148, 1152; Bannister v. Dept. of Streets, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647. A decision is arbitrary and capricious if there is no rational basis for the action taken. Clark, 12-1274, p. 5, 155 So.3d at 535 (citing Cure, 07-0166, p. 2, 964 So.2d at 1095). Applying this standard, the appellate court must review two parts of the Commission’s decision: (1) whether the Appointing Authority established good, legal cause for taking disciplinary actjon; and, if so, (2) whether the punishment imposed is commensurate with the offense. Hills v. New Orleans City Council, 98-1101, p. 6 (La.App. 4 Cir. 12/9/98), 725 So.2d 55, 58.
Honoré, 14-0986, pp. 8-9, 178 So.3d at 1126-1127.
LAW AND ANALYSIS
In the instant case, Sgt. Regis asserts eight assignments of error, as set forth above. Some of the assignments of error are duplicative, and will be grouped into three parts for discussion.
JjL
In this first part, we address the first, fourth, fifth, and sixth assignments of error as they are intertwined. In these assignments of error, Sgt. Regis asserts that the decision of the CSC was manifestly erroneous because the testimony and the record evidence failed to establish that she violated NOPD policies and/or that her actions impaired the efficient operation of the department. In sum, Sgt. Regis submits that the conclusions reached by the CSC were arbitrary, unreasonable, and without any basis in fact or law. We disagree.
Sgt. Regis submits that her actions did not violate NOPD policy. In defense of her actions, Sgt. Regis avers that she instructed Officer Fortuna to remove battery on an officer from the gist because he could not articulate how a battery occurred or confirm that there was a struggle. She further contends that she did not fill out a use of force report because it was not warranted under the circumstances. The record evidence does not support these assertions.
After reviewing the appellate record, and in evaluating the CSC’s exercise of discretion in determining whether the disciplinary action imposed is based on legal cause, we find that a rational basis existed for the CSC’s decision. The CSC’s ruling was based on the testimony of numerous witnesses, which clearly contradicted Sgt. Regis’s testimony regarding her instructions to Officer Fortuna in drafting the gist and in her failure to prepare a use of force report. The record also reveals that Sgt. Regis’s testimony before the hearing examiner contradicted her prior statements made in connection with the investigation. More specifically, before the | ^hearing examiner Sgt. Regis admitted that she knew Officer Fortuna used force to take the subject to the ground. She also admitted on cross-examination that she knew Officer Kendrick was present on the scene. The record reveals that the hearing officer and the CSC reasonably evaluated the conflicting testimony and determined that Sgt. Regis’s account of the events lacked credibility. Thus, the ruling was not arbitrary and capricious.
Chief Albert testified how Sgt. Regis’s actions violated the NOPD policies and how those violations impaired the efficient operation of the department. Chief Albert *174 explained that Sgt. Regis’s actions in neglecting her duties “can erode and possibly did erode the confidence in the public and by the members of the New Orleans Police Department that get out and do the work every day. The officers have got' to have the confidence to know that the department will stand by them when they act accordingly.”
Regarding the violation of Rule 2, moral conduct and truthfulness, Chief Albert further explained:
This administration has made it' clear that honestly [sic] and truthfulness is something that’s going to be the highest standard. It’s not a loose charge that’s used loosely. "It’s a serious violation. And what happened in this case is that, again, the officers that’s out in the street doing the work that we ask them to do, we must support them and a violation as such erodes the confidence between the officers and the support staff that they won’t have the support of the police department when they actually doing their jobs.
Based on our review of the record, we find the CSC correctly determined that Sgt. Regis’s actions were prejudicial to the public service and/or impaired the efficient operation of the NOPD.
J^n.
In this part, we address the issues presented in assignments of error two, seven and eight, ie., whether the discipline imposed was commensurate with the alleged infractions. Sgt. Regis argues in her brief to this Court that the penalty of demotion for the Rule 4 violation (Neglect of Duty for failure to file a use of force report) exceeded the NOPD penalty matrix. Sgt. Regis contends that Chief Albert, in his testimony before the hearing officer, classified the alleged rule .violation, as a first offense, for which the matrix provides for a 3-15 day suspension, not a demotion. However, the record reflects that Chief Albert testified that he was not sure whether Sgt. Regis’s Rule 4 violation was a first or second offense. The record further reflects that .Sgt. Regis was notified by letter dated January 30, 2012, that - the violation of Rule 4 was listed as a second offense.
Chief Albert identified the penalty matrix set forth in Chapter 26.2 of the NOPD’s operations policy procedure manual, which outlines the definition of the rules and gives the ranges of the penalties. Regarding Rule 4, he stated that the penalty for a second violation, in a category 2 case such as this one,'ranges from a 15-day suspension to dismissal. As such, demotion is within that penalty range. Regarding the violations of Rules 2, and 6, Chief Albert testified that the only penalty allowed is dismissal. Based on our review of the record, we find that the penalties assessed against Sgt. Regis were commensurate with the violations charged.
III.
Finally, we address Sgt. Regis’s third assignment of error, wherein she asserts that the CSC’s ruling was in error because the NOPD failed to |incomply with the due process requirements of Loudermill. More specifically, Sgt. Regis maintains that she did not receive written notice that she was being charged with violating Rule 2 due to alleged untouthfulness. We find merit in this assignment of error.
It is undisputed that the truthfulness charge was not in the origina^ notice to Sgt. Regis, but was added after the pre-disciplinary hearing.[2] Chief Albert testi- *175 fled before the hearing officer that the truthfulness charge was added after the disciplinary hearing. He explained that the untruthfulness occurred during the disci-plinaiy hearing, and was “based on what the investigator’s report had, the testimony of Sgt. Regis, and the testimony of Officer Fortuna.”
In Williams v. Dept. of Property Mgmt., 02-1407, pp. 2-3 (La.App. 4 Cir. 4/16/03), 846 So.2d 102, 104, this Court discussed the notice requirement as follows:
Louisiana Constitution Article 10, § 8, provides in part that: “No person who has gained permanent status in classified state or city service shall be subject to disciplinary action except for cause expressed in writing.” Rule IX, § 1.2 of the Rules of the Civil Service Commission for the City of New Orleans, states that “[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pre-termination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action.” In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), the United States Supreme Court held:
The essential requirements of due process ... are notice and an opportunity to respond... .The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s evidence, and an- | ^opportunity to present his side of the story... .To require more than this prior to termination would intrude to an unwarranted extent on the government’s interest in quickly removing.an unsatisfactory employee.
In Riggins v. Department of Sanitation, 92-1921 (La. App. 4 Cir. 1993), 617 So.2d 112, this Court reviewed Louder-mill in light of Rule IX, § 1.2, of the Rules of the Civil Service Commission and concluded that an employee is entitled to advance notice of the charges and evidence against him prior to his pre-termination hearing. See also Henderson v. Sewerage and Water Bd., 99-1508 (La. App. 4 Cir. 12/22/99), 752 So.2d 252. An explanation of the evidence is a prerequisite to the employee’s pre-termination opportunity to present his side of the story. Webb v. Department of Safety & Permits, 543 So.2d 582 (La. App. 4 Cir. 1989). This Court has previously held that notice of .the charges should fully describe the conduct complained of, setting forth the relevant dates and places and.the names of witnesses against the employee to enable the employee to fully answer and prepare a defense. Id.
In Williams, the plaintiff appealed the termination of her employment by the Department of Property Management for the City of New Orleans. Williams was informed by the letter that termination of her employment was being considered as a result of payroll fraud which occurred on April 13, 2001. The letter stated that the plaintiff “should be prepared to defend [herjself against the charges of payroll fraud that occurred on Friday, April 13, 2001.” This one incident of payroll fraud was the only matter discussed at the pre-termination hearing. After the hearing, two other incidents of payroll fraud were discovered and the plaintiff was terminated on May 1, 2001. The letter of May 1, 2001 stated:
*176 We have been forced to terminate you because you altered your time card on three (3) separate occasions after your supervisor, Sergeant Oris Buckner, had signed the time card approving your time and attendance. On each occasion your action resulted in a benefit to your pay or leave balance and, thus, constituted payroll fraud.”
11sThe letter also revealed that that the committee “reconvened and reviewed additional time cards” after an additional alleged incident of payroll fraud was found after the hearing on April 25, 2001.
This Court in Williams reversed the CSC, finding that because the two additional incidents of payroll fraud were used in terminating the plaintiffs employment, “the plaintiff was entitled to notice of these additional charges and an opportunity to present a defense in regards to these additional charges. The requirements of La. Const. Art. 10 § 8 and Loudermill were not met.” Williams, 02-1407, p. 5, 846 So.2d at 105.
In the present case, it is undisputed that Sgt. Regis was not given advanced notice of the truthfulness charge, and she was not provided with an adequate opportunity to present a defense to that charge. Thus, we find that the NOPD did not fulfill the above referenced due process requirements in sustaining the Rule 2 violation for truthfulness. Consequently we reverse that part of the CSC’s ruling, which upheld the termination of Sgt. Regis based on the Rule 2 violation.
As previously stated, we do not find that the CSC was arbitrary and/or capricious in denying Sgt. Regis’s appeal regarding the sustained violations of Rules 4 and 6. Based on the record evidence, we agree with the findings of the hearing officer, which were adopted by the CSC. We also find that the punishments assessed in this case are commensurate with violating Rule 4: Performance of Duty; Paragraph 4: Neglect of Duty, Section C: Subparagraph 4; Failing to make a written report when such is indicated, and Rule 6: Official Information, Paragraph 2; False or inaccurate reports.
^CONCLUSION
For the foregoing reasons, we affirm in part, finding that the CSC’s decision to deny Sgt. Regis’s appeal in connection with the sustained violations of Rules 4 and 6 was based on sufficient legal cause and was neither arbitrary nor capricious. We reverse that part of the CSC’s ruling, which denied Sgt. Regis’s appeal in connection with the sustained violation of Rule 2, upon finding that Sgt. Regis was not provided with adequate notice of that charge.
AFFIRMED IN PART; REVERSED IN PART

. It is important to note here that the Rule 2 violation (Honesty and Truthfulness) was not included in the original DI-1 Form sent to Sgt. Regis on March 23, 2011. This alleged violation was added after the disciplinary investigation was concluded.

. A separate and unrelated truthfulness charge, which was contained the June 19, *175 2011 notice to Sgt, Regis, was dismissed prior to her termination, and is not at issue in this appeal.