| | | |
|---|---|---|
| **MICHAEL EBBS** | * | **NO. 2022-CA-0185** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **NEW ORLEANS FIRE DEPARTMENT** | * | **FOURTH CIRCUIT** |
| | * | **STATE OF LOUISIANA** |

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9217
Hearing Examiner Alexandra E. Mora
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Rachael D. Johnson)

Danielle G. Davis
Julio C. Baca, Jr.
630 4th Street
Gretna, LA 70053

    COUNSEL FOR PLAINTIFF/APPELLANT


William R. H. Goforth
ASSISTANT CITY ATTORNEY
Elizabeth Robins
DEPUTY CITY ATTORNEY
Churita H. Hansell
CHIEF DEPUTY CITY ATTORNEY
Kevin C. Hill
SENIOR CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

    COUNSEL FOR DEFENDANT/APPELLEE

        **AMENDED; AFFIRMED AS AMENDED**

        **DECEMBER 28, 2022**

This is a civil service case. Plaintiff/appellant, Michael Ebbs ("Captain Ebbs"), appeals the December 1, 2021 decision of the Civil Service Commission ("CSC" or "Commission"), which upheld the termination of Captain Ebbs' employment with defendant/appellee, New Orleans Fire Department ("NOFD"). For the reasons that follow, we amend the decision, and we affirm as amended.

## FACTS AND PROCEDURAL HISTORY

Captain Ebbs was a fire captain with permanent status with NOFD. The discipline at issue arose from his failure to respond to a fire, after which he was accused of making false statements regarding the incident.[1] On June 14, 2020, following a shift change, Captain Ebbs failed to deploy his platoon to respond to a fire and relieve the platoon on duty. Captain Ebbs claimed he was unable to respond to the fire because he was injured at the fire station when the overhead

---

[1]NOFD initially disciplined Captain Ebbs in connection with two separate, but similar, incidents. The CSC granted, in part, Captain Ebbs' appeal as to the first incident, which occurred on June 9, 2020. Therein, the CSC found that the investigation of the conduct was not timely concluded, and the discipline was an absolute nullity under the Firefighters Bill of Rights, La. R.S. 33:2181, *et seq.* The CSC denied, in part, Captain Ebbs' appeal with respect to the second incident, which occurred on June 14, 2020. Thus, under the CSC's decision, Captain Ebbs' termination was upheld. Only the June 14, 2020 incident is at issue in this appeal, and we do not address the June 9, 2020 incident in this opinion.

1

door malfunctioned and fell onto his body. On either the same day or the next day, Deputy Chief of Safety Terry Hardy ("Chief Hardy") reported to the fire station and began an investigation of the door. Captain Ebbs brought a workers' compensation claim alleging injuries resulting from this incident.

On June 18, 2020, Captain Ebbs submitted a NOFD Special Report in which he stated that the overhead door "jolted and came down swiftly, causing [him] to fall backwards." Captain Ebbs further stated that another firefighter, Robert Pitre ("Pitre"), released the door that had Captain Ebbs "pinned."[2] On July 6, 2020, Chief Hardy obtained the June 14, 2020 Real Time Crime Camera ("RTCC") footage of the fire station's exterior doors.

On July 10, 2020, NOFD furnished Captain Ebbs with a Notice of Formal Investigation, directing him to appear for a fact-finding interview on July 15, 2020 regarding his Special Report and workers' compensation claim. NOFD specified in this notice that it was investigating violations of NOFD Rules and Regulations, Chapter 5 General Duties & Rules, General Conduct 5.2.1 ("Section 5.2.1") which states:

> No member shall make any false statements or reports concerning another member's conduct or character, or regarding any business of the Department. Members shall not make any false entries or statements in any Department record books, reports, or testimony. Omission of any facts from any reports or record books with the intent to deceive shall be considered the same as a false entry.

[2] Pitre was disciplined for statements he made regarding the June 14, 2020 incident. Pitre's discipline was reversed by another panel of this Court, which found that NOFD failed to timely conclude the investigation of Pitre's conduct as required by La. R.S. 33:2181, *et seq. See Pitre v. Dep't of Fire*, 21-0632 (La. App. 4 Cir. 4/20/22), 338 So.3d 70, *writ denied*, 22-00804 (La. 9/27/22), 347 So.3d 152.

On July 15, 2020, NOFD conducted the fact-finding interview of Captain Ebbs. Thereafter, on August 10, 2020, Chief Hardy obtained enhanced RTCC footage of the fire station exterior from June 14, 2020, from which Chief Hardy concluded that the overhead door did not fall onto any person.

Also on August 10, 2020, NOFD District Chief William Shanks brought four written Disciplinary Charges against Captain Ebbs, two of which were violations of Section 5.2.1 concerning false statements or reports. According to the charges, Captain Ebbs provided false information in his Special Report regarding the June 14, 2020 incident and during the formal fact-finding investigation of the overhead door and his workers' compensation claim.

On August 14, 2020, Chief Hardy contacted Captain Ebbs' attorney to schedule a pre-termination hearing during the week of August 17 to 21, 2020. Captain Ebbs' attorney responded on August 18, 2020 that she was unavailable and requested later hearing dates. On August 21, 2020, NOFD's attorney emailed Captain Ebbs' attorney to set a telephone scheduling conference on August 24, 2020, on which date NOFD's attorney proposed dates of September 2, 3, or 4, 2020. On September 1, 2020, Captain Ebbs' attorney advised she was unavailable on September 4, 2020. On September 2, 2020, Captain Ebbs' attorney contacted NOFD's attorney to request that a disciplinary hearing and pre-termination hearing be scheduled "next week." NOFD's attorney responded via email on the same day proposing to set the disciplinary hearing on September 8, 2020 and the pre-

termination on September 11, 2020. Captain Ebbs' attorney replied to this email and agreed to these hearing dates.

On September 8, 2020, the disciplinary hearing went forward, at which Captain Ebbs gave additional verbal statements concerning his version of the June 14, 2020 events. On September 8, 2020, NOFD provided Captain Ebbs with a Notification of Pre-Termination Hearing, ordering him to attend the pre-termination hearing on September 11, 2020. The pre-termination went forward on this date.

On September 28, 2020, Superintendent of Fire Timothy A. McConnell issued Captain Ebbs a termination letter, stating that Captain Ebbs' employment with NOFD was terminated effective September 29, 2020 for violations of Section 5.2.1 of NOFD Rules and Regulation. The termination letter specified, first, that Captain Ebbs' employment was terminated for making false statements with intent to deceive in his June 18, 2020 Special Report.[3] In addition, the termination letter stated that Captain Ebbs' employment was terminated on further grounds: for

---

[3] The termination letter states, in pertinent part:

- You falsely reported that "(t)he door did not respond, when the 'down' button was pressed."
- You falsely reported that you "observed that the door was off its track."
- You falsely reported that "once [you] pressed the 'up' button the door jolted and came down swiftly, causing "you" to fall backwards.
- You falsely reported that the overhead door "had [you] pinned."
- You falsely reported that "[t]his damaged overhead/garage door had been reported for repairs several times to [District Chief] 503."

having made false statements to NOFD investigators during the July 15, 2020 fact-finding interview and September 8, 2020 disciplinary hearing.[4]

Captain Ebbs appealed his termination to the CSC, where a hearing took place on May 24 and 25, 2021. On November 1, 2021, the hearing examiner provided a report recommending the appeal be denied. On December 1, 2021, the CSC issued its decision upholding the termination of Ebbs' employment.[5]

## DISCUSSION

Captain Ebbs brought the instant appeal, wherein he raises two main issues: (1) whether his discipline is null as untimely; and (2) whether the CSC erred in finding legal cause for his discipline. This Court, on its own motion, ordered the

_____

[4] The termination letter also sets forth:

> - You falsely stated that an overhead door of the station was nearly all the way up, then came down fast and slammed on your foot;
> - You falsely stated that after the overhead door came down on your foot and Firefighter Robert Pitre, Jr. pressed the button to remove the overhead door from your foot, the overhead door initially traveled down instead of up;
> - You falsely stated that Firefighter Robert Pitre, Jr. attempted to pull you from under the overhead door before pressing the button to raise the overhead door;
> - You falsely stated that the overhead door did not have a mechanism that would cause the overhead door to go back up if it hit something;
> - You falsely stated that the overhead door crushed a mop bucket;
> - You falsely stated that when the overhead door allegedly struck you, you were attempting to secure the station by closing the overhead door so you could go to the fire as ordered by your chief;
> - You falsely stated that you had gotten your gear before the overhead door came down on your foot.
> - You falsely stated that you did not have the chance to get your gear before the overhead door came down on your foot;
> - You falsely stated that you had previously reported the overhead door as broken prior to June 9, 2020.

[5] *See* n. 1, *infra.*

litigants to submit supplemental briefs addressing whether NOFD provided Captain Ebbs with sufficient advance notice of the charges and evidence against him prior to his pre-termination hearing.

Appellate courts employ a multifaceted standard of review in civil service cases, as follows:

> First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the Commission's decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review.

*Gant v. New Orleans Police Dep't*, 19-0640, p. 5 (La. App. 4 Cir. 12/4/19), 286 So.3d 524, 529 (quotation omitted).

**Due Process**

We first address the due process issue raised on this Court's own motion.[6] This Court discussed civil service employees' due process right to notice and a pre-termination hearing in *Regis v. Dep't of Police*, 16-0821, pp. 16-17 (La. App. 4 Cir. 5/24/17), 221 So.3d 165, 175 (quotation omitted) as follows:

> Louisiana Constitution Article 10, § 8, provides in part that: "No person who has gained permanent status in classified state or city service shall be subject to

---

[6] *See generally* La. C.C.P. art. 2164 ("[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal….").

6

disciplinary action except for cause expressed in writing." Rule IX, § 1.2 of the Rules of the Civil Service Commission for the City of New Orleans, states that "[i]n every case of termination of employment of a regular employee, the appointing authority shall conduct a pretermination hearing as required by law and shall notify the employee of the disciplinary action being recommended prior to taking the action." In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), the United States Supreme Court held:

> The essential requirements of due process ... are notice and an opportunity to respond....The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story....To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

> In *Riggins v. Department of Sanitation*, 92-1921 (La. App. 4 Cir. 1993), 617 So.2d 112, this Court reviewed *Loudermill* in light of Rule IX, § 1.2, of the Rules of the Civil Service Commission and concluded that an employee is entitled to advance notice of the charges and evidence against him prior to his pre-termination hearing. *See also Henderson v. Sewerage and Water Bd.*, 99-1508 (La. App. 4 Cir. 12/22/99), 752 So.2d 252. An explanation of the evidence is a prerequisite to the employee's pre-termination opportunity to present his side of the story. *Webb v. Department of Safety & Permits*, 543 So.2d 582 (La. App. 4 Cir. 1989). This Court has previously held that notice of the charges should fully describe the conduct complained of, setting forth the relevant dates and places and the names of witnesses against the employee to enable the employee to fully answer and prepare a defense. *Id.*

Neither the parties nor the CSC raised the issue of notice in these proceedings. Captain Ebbs' September 28, 2020 termination letter demonstrates that he was terminated based on written reports and verbal statements regarding the

events of June 14, 2020. According to the termination letter, Captain Ebbs made false statements in the June 18, 2020 Special Report he submitted to NOFD, in his July 15, 2020 fact-finding interview, and in his September 8, 2020 disciplinary hearing. In his supplemental brief, Captain Ebbs concedes his knowledge that he was investigated for and charged with making false statements in his June 18, 2020 Special Report and in his July 15, 2020 fact-finding interview. He contends, however, and we agree, that NOFD did not provide Captain Ebbs with notice of an additional charge of making false statements during his September 8, 2020 disciplinary hearing.

Captain Ebbs cites to this Court's decision in *Williams v. Dep't of Prop. Mgmt.*, 02-1407, p. 4 (La. App. 4 Cir. 4/16/03), 846 So.2d 102, 104-05, wherein the employee was notified in writing that her termination was being considered for a single instance of payroll fraud, which was the only instance discussed at the pre-termination hearing. After the hearing, however, the panel reconvened and reviewed additional timecards, and discovered two additional instances of payroll fraud. *Id.*, 02-1407, p. 4, 846 So.2d at 105. The employee was terminated for all three incidents of payroll fraud. *Id.*, 02-1407, p. 5, 846 So.2d at 105. This Court reversed the discipline in its entirety, on the grounds that "the Department of Property Management used these other two incidents of payroll fraud to reach its decision to terminate plaintiff's employment, [such that] the plaintiff was entitled to notice of these additional charges and an opportunity to present a defense in regards to these additional charges." *Id.* Under those particular circumstances, the

CSC's decision was reversed and the employee reinstated, such that the Department of Property Management could "give her proper notice, an explanation of the charges against her, an adequate pre-termination opportunity to respond and proper written notice of termination." *Id.*

We find this case more analogous to this Court's more recent ruling in *Regis*, 16-0821, pp. 16-18, 221 So.3d at 175-76. The *Regis* Court reversed, in part, the CSC's ruling insofar as it upheld a police sergeant's termination for an untruthfulness charge for which the sergeant was not provided advance notice, but which was added after the disciplinary hearing. *Id.* The sergeant, however, was provided advance notice of two other charges for which he was demoted and terminated. *Id.*, 16-0821, p. 15, 221 So.3d at 174. Thus, the sergeant's discipline – demotion and termination – for these two charges was upheld, even though termination on the untruthfulness charge was overturned. *Id.*, 16-0821, p. 19, 221 So.3d at 176.

Captain Ebbs admits that that the August 10, 2020 Disciplinary Charges notified him of charges against him for his June 18, 2020 and July 15, 2020 false statements. He also concedes that, at the conclusion of the September 8, 2020 disciplinary hearing, NOFD gave him four videos of the overhead door (including the enhanced RTCC footage of June 14, 2020) as well as two audio recordings of his July 15, 2020 fact-finding interview and September 8, 2020 disciplinary hearing. While he complains of NOFD's delay in providing him with the enhanced RTCC footage of the overhead door, no dispute exists that Captain Ebbs was

9

provided this evidence before his September 11, 2020 pre-termination hearing, and we cannot say that he was deprived of notice of this evidence against him.

Thus, with respect to charges based on Captain Ebbs' June 18, 2020 Special Report and July 15, 2020 fact-finding interview, we find that Captain Ebbs received adequate due process. However, for the reasons articulated in *Regis*, *supra*, we find that NOFD failed to provide sufficient advance notice of the additional charge of making untruthful statements on September 8, 2020 and we amend the decision, in part, to reflect that Captain Ebbs' termination is not based on his September 8, 2020 statements. Regardless, as we are guided by the result reached in *Regis*, *supra*, and for the reasons that follow, we do not disturb Captain Ebbs' discipline for the remaining two charges of making false statements or reports.

**Sixty-Day Rule**

We now turn to Captain Ebbs' primary argument, that the CSC erred in finding that NOFD complied with the Sixty-Day Rule set forth in the Firefighters Bill of Rights, La. R.S. 33:2181 *et seq.* When a fire employee is under investigation as provided in La. R.S. 33:2181, the appointing authority (here, NOFD) is bound by enumerated minimum standards.[7] "Any discipline, demotion,

---

[7] Subsection (B) of this statute specifies:

> B. Whenever a fire employee is under investigation, the following minimum standards shall apply:
> (1) Prior to commencing a formal investigation of a fire employee, the appointing authority shall notify the employee in writing of the nature of the investigation, of the identity and authority of the person conducting such investigation, and of the specific charges or violations being investigated.

dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of this Subpart is an absolute nullity." La. R.S. 33:2181(C). The Sixty-Day Rule mandates that disciplinary investigations of a fire employee must be "completed within sixty days, including the conducting of any pre-disciplinary hearing or conference." La. R.S. 33:2186(A). Nevertheless, "[n]othing contained in this Section shall be construed to prohibit the fire employee under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days." La. R.S. 33:2186(C).

---

(2) The fire employee being investigated shall be informed in writing at the commencement of any interrogation of the nature of the investigation, of the identity and authority of the person conducting such investigation, of the identity of all persons present during such interrogation, and of the specific charges or violations being investigated. The fire employee shall be allowed to make notes.

(3) Any interrogation of a fire employee in connection with an investigation shall be for a reasonable period of time and shall allow for reasonable periods for the rest and personal necessities of such fire employee.

(4) All interrogations of any fire employee in connection with the investigation shall be recorded in full. The fire employee shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements, upon submitting a written request to the fire chief.

(5) The fire employee shall be entitled to the presence of his counsel or representative, or both, at any interrogation in connection with the investigation. The fire employee's representative or counsel shall be allowed to offer advice to the employee and to make statements on the record at any interrogation in the course of the investigation.

(6) The counsel or representative for the fire employee under investigation may call witnesses to testify on the employee's behalf.

(7) No statement made by a fire employee during the course of an administrative investigation shall be admissible in a criminal proceeding.

11

Captain Ebbs contends that the investigation into his discipline began on either June 15, 2020 (the day he states Chief Hardy investigated the door[8]); July 6, 2020 (the day Chief Hardy obtained the RTCC footage of the door); or July 8, 2020 (the day of Pitre's fact-finding interview). According to this argument, the pre-termination hearing took place and disciplinary investigation concluded beyond the sixty-day limit. Ebbs disputes that any formal written agreement was reached to extend the investigation under Section 2186(C). The CSC found that NOFD's investigation of Ebbs' conduct commenced on July 8, 2020 with the fact-finding interview of Pitre. The CSC also relied on a series of email correspondence between attorneys for Captain Ebbs and NOFD beginning on August 21, 2020 and ending on September 2, 2020 wherein the parties agreed to schedule the disciplinary hearing on September 8, 2020 and pre-termination hearing on September 11, 2020. The CSC concluded from these emails that the parties agreed in writing to extend the sixty-day period to complete NOFD's investigation of Captain Ebbs' conduct. The CSC reasoned:

> The undersigned Commissioners find that the Fire Department's investigation of Ebbs for the June 14 incident began at least as of July 8, as Superintendent McConnell testified in the companion *Pitre* case. Sixty days from July 8 is September 6. The evidence presented indicates that within the 60 day limit, Chief Hardy initially and then counsel for the Fire Department had several discussions with Ebbs's counsel about scheduling the pre-termination hearing for a date within the required 60 days. More specifically, Ebbs's counsel did not want the hearing scheduled during the week of August 17-21 or between September 2 and 4 (even though Ebbs's

---

[8] Captain Ebbs' brief states that this was the date on which Chief Hardy investigated the door, though Chief Hardy testified that he investigated the door on June 14, 2020.

counsel originally indicated she was available on September 4). The evidence presented clearly shows that the Appointing Authority and Ebbs's counsel were clearly trying through their written communications to find a date for the hearing which would accommodate Ebbs and his lawyer from a scheduling standpoint. Ebbs's lawyer agreed in writing to have the hearing on September 11, thus by consent extending the deadline for the completion of the investigation until September 11. For Ebbs to now claim that the appointing authority missed the 60 day deadline when it and its lawyer were clearly trying to accommodate Ebbs and his lawyer is not an argument worthy of any merit given the evidence presented.

The undersigned Commissioners find that the evidence indicates the parties agreed in writing to extend the time for the investigation under La. R.S. 33:2186(C), at least insofar as the June 14 incident was concerned. . . .

We are persuaded by this reasoning. We have located no reported case interpreting the written agreement standard under Paragraph C. We view the CSC's determination that the parties entered into a written agreement extending the time for investigation as a finding of fact, which we will not disturb unless manifestly erroneous or clearly wrong.[9] We find no error in the CSC's determination that Captain Ebbs, through his counsel's e-mail correspondence requesting and finally agreeing to a delay in the pre-termination hearing, agreed in writing to extend the investigation until September 11, 2020.[10] We find no merit in

---

[9] "[A]s in other civil matters, deference must be given to the Commission's factual findings, which should not be disturbed unless manifestly erroneous or clearly wrong." *Abbott v. New Orleans Police Dep't*, 14-0993, p. 8 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 197 (quotations omitted). *Accord Read v. Willwoods Cmty.*, 14-1475, p. 6 (La. 3/17/15), 165 So.3d 883, 888 (stating the general proposition that the existence or non-existence of a contract is a question of fact, subject to appellate review for manifest error).

[10] To the extent that Captain Ebbs asserts that the investigation continued beyond the September 11, 2020 pre-termination hearing until NOFD provided him the September 28, 2020 termination letter, we find no support for such a contention, particularly where La. R.S. 33:2186(A) explicitly sets forth the deadline to complete the investigation: "within sixty days, including the conducting of any pre-disciplinary hearing or conference."

Captain Ebbs' contention that NOFD failed to comply with the mandates of La. R.S. 33:2186.

**Substantive Challenge – Merits of Discipline**

Addressing Captain Ebbs' final argument, we examine whether the CSC's decision to uphold his termination was arbitrary and capricious. Captain Ebbs contends that the CSC erred in determining that NOFD proved good and lawful cause for his discipline and that Captain Ebbs' termination was commensurate with the alleged misconduct.

It is well-settled that "[a]n employee with permanent status in the classified civil service cannot be subject to disciplinary action by his employer except for cause expressed in writing." *Gant*, 19-0640, p. 9, 286 So.3d at 531 (quotation omitted). NOFD bears the burden to establish lawful cause for discipline "by proving, by a preponderance of the evidence, that the complained of conduct occurred, and that the complained of conduct impaired the efficiency of the department." *Id.* The CSC "has a duty to decide independently from the facts presented" whether NOFD carried its burden of proof. *Abbott v. New Orleans Police Dep't*, 14-0993, p. 7 (La. App. 4 Cir. 2/11/15), 165 So.3d 191, 197. This Court should not modify the decision of the CSC "unless it is arbitrary, capricious, or characterized by an abuse of discretion." *Gant*, 19-0640, p. 9, 286 So.3d at 531. A decision by the CSC is arbitrary and capricious if there is no rational basis for the CSC's action. *Id.*

Captain Ebbs was disciplined for making false statements in violation of Section 5.2.1 of NOFD Rules and Regulations, specifically, written statements in the June 18, 2020 Special Report and verbal statements in the July 15, 2020 fact-finding interview, in which he claimed that he was injured when a malfunctioning overhead door fell onto him.

As to lawful cause, the CSC determined that NOFD carried its burden of proving that Captain Ebbs was untruthful about his failure to report to the June 14, 2020 fire, because the RTCC footage in evidence did not reflect that the overhead door fell on Captain Ebbs. Superintendent Roman Nelson ("Chief Nelson") testified as the appointing authority involved in the disciplinary process. He attested that a fire officer's primary responsibility is to respond to fires, and that failure to respond to a fire and untruthfulness are violations of public confidence in firefighters whom the public expects to respond when dispatched. He noted that investigations cannot be effective where a member is untruthful during an investigation. Civil Service Rule IX, Section 1.1, provides the following:

> When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
>
> (a) termination from the service....

15

Chief Nelson testified that termination was the appropriate penalty for Captain Ebbs' false statements about injuries, a malfunctioning door, and failure to respond to a fire, particularly where firefighters have high risks of injuries and in light of high workers' compensation expenses for the city.

Captain Ebbs argues that the CSC improperly relied on the footage of the overhead door in that Detective and Forensic Examiner, Eddie Williams, could not confirm where the RTCC footage originally came from prior to him receiving it from Former Superintendent McConnell, who requested that he enlarge and sharpen the images. He further took issue with the detail observable in the enhanced images, particularly that the inside of the fire station cannot be seen. Captain Ebbs also argued that the CSC failed to consider testimony of other witnesses who confirmed his contention of ongoing mechanical issues with the overhead doors at the firehouse. Nevertheless, the CSC exercised its independent duty in reviewing the RTCC footage along with the testimony and evidence before it and concluded that that Captain Ebbs' conduct occurred, that it impaired the efficiency of NOFD's operations, and that termination was commensurate with Captain Ebbs' conduct. We cannot say that the CSC's decision to uphold NOFD's discipline of Captain Ebbs was arbitrary and capricious. We find this assignment without merit.

## CONCLUSION

Accordingly, for the reasons set forth in this opinion, we amend the decision of the CSC to reflect that Captain Ebbs' termination is upheld as to only the

16

discipline for his statements of June 18, 2020 and July 15, 2020 regarding the June 14, 2020 incident. We affirm as amended.

**AMENDED; AFFIRMED AS AMENDED**