GARY HARDY               *        NO. 2021-CA-0715

VERSUS                  *

                                 COURT OF APPEAL

JUVENILE JUSTICE      *

INTERVENTION CENTER         FOURTH CIRCUIT

                                 *

                                 STATE OF LOUISIANA

                 * * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9162
Honorable Jay Alan Ginsberg, Hearing Officer
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

ERNEST L. JONES
ATTORNEY AT LAW
2317 Canal Street
New Orleans, Louisiana 70119

      COUNSEL FOR PLAINTIFF/APPELLANT

ELIZABETH ROBINS
DEPUTY CITY ATTORNEY
KEVIN C. HILL
SR. CHIEF DEPUTY CITY ATTORNEY
DONESIA D. TURNER
ASSISTANT CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido Street, Suite 5E03
New Orleans, Louisiana 70112

      COUNSEL FOR DEFENDANT/APPELLEE

                                     **AFFIRMED**
                                   **June 15, 2022**

Gary Hardy appeals the decision of the City of New Orleans Civil Service Commission ("Commission"), denying his appeal of a seven-day suspension imposed by his employer, the Department of Human Services Juvenile Justice Intervention Center ("JJIC"). For the reasons set forth below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Mr. Hardy was employed as a Maintenance Engineer Second Class at the JJIC, a facility that housed juvenile offenders. Along with Mr. Hardy, the maintenance department consisted of a Maintenance Engineer First Class, two laborers and three plant attendants. The department was supervised by Shaun Lewis, the Superintendent of Building Maintenance.

On March 18, 2020, Mr. Lewis held a meeting to discuss COVID-19 cleaning protocols. Mr. Hardy was in attendance at the meeting and has acknowledged that the enhanced cleaning and sanitizing of the dining hall was proposed to improve the efficiency and organizational response to the pandemic at the JJIC.

1

In a subsequent meeting on April 9, 2020, Dr. Kyshun Webster, Director of the JJIC, discussed the heightened cleaning protocols and expectations of the staff in light of COVID-19. Mr. Hardy was present.

Shortly before 11:00 a.m. on April 18, 2020, Karen Davis, senior foodservice worker at the JJIC, paged the maintenance department asking that the dining hall be cleaned before the residents arrived for the lunch service. Mr. Hardy received the request, as he was the only member of the maintenance department present at the time. Mr. Hardy informed Ms. Davis that the dining hall would be cleaned when Willie Miles, one of the maintenance department plant attendants, reported for work at noon.

When Mr. Miles arrived at noon, at Mr. Hardy's request, he began cleaning the dining hall. He was unable to complete the task before the residents entered for lunch.

On April 20, 2020, Dr. Webster issued a written notice to Mr. Hardy that he was suspended for seven days due to his failure to clean the dining hall on April 18, 2020. The written notice of suspension informed Mr. Hardy that "[y]ou are derelict in your duties by failure to prioritize and adhere to and follow the COVID-19 (Coronavirus) high frequency cleaning and/or sanitizing mandates and protocols."

Mr. Hardy appealed the suspension, and an administrative hearing was conducted. Following testimony and the introduction of evidence, the Commission's Hearing Examiner concluded that "[t]he Appointing Authority has established by a preponderance of the evidence that it disciplined the Appellant for cause and that the penalty was commensurate with the violation."

The Commission adopted the Hearing Examiner's recommendation and denied Mr. Hardy's appeal, finding:

> The Appointing Authority has carried its burden of proving that the dining hall was not cleaned in accordance with the protocols implemented on March 18, 2020, and that Mr. Hardy was ultimately responsible for ensuring this cleaning was accomplished. The Appointing Authority has also carried its burden of showing that failure to comply with the cleaning protocols impaired the efficient operation of the JJIC. The protocols were adopted for the safety of the residents of the JJIC, and failure to comply with the protocols created a risk of exposure for the residents.

On appeal to this Court, Mr. Hardy asserts the following assignments of error: 1) The JJIC and the Commission violated his Constitutional Rights of Notice of Suspension; 2) The Commission's decision is contrary to the law and evidence; 3) The Commission erred in concluding that Mr. Hardy's actions impaired the efficient operations of the JJIC; and 4) The Hearing Officer erred in refusing to allow Mr. Hardy to proffer evidence in his Motion in *Limine*.

**LEGAL PRECEPTS AND STANDARD OF REVIEW**

An employee subjected to disciplinary action by his or her appointing authority has the right to appeal to the Commission. *Honore' v. Dept. of Public Works*, 2014-0986, p. 8 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1126 (citing La. Const. Art. 10 §§ 8, 12). On appeal, the appointing authority "must prove by a preponderance of the evidence good or lawful cause for taking disciplinary action." *Honore'*, 2014-0986, p. 8, 178 So.3d at 1126-27 (citing *Cure v. Dept. of Police*, 2007-0166, p. 2 (La. App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094). "The Commission must decide independently from the facts presented whether the appointing authority had legal cause for taking the disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction." *Milton v. Dept. of Public Works*, 2016-0625, p. 10 (La. App. 4 Cir. 3/22/17), 216 So.3d 825,

831 (citing *Whitaker v. New Orleans Police Dept.*, 2003-0512, p. 2 (La. App. 4 Cir. 9/17/03), 863 So.2d 572, 574; *Walters v. Dept. of Police of City of New Orleans*, 454 So.2d 106, 113 (La. 1984)).

The standard of appellate review in civil service disciplinary matters was reiterated in *Mathieu v. New Orleans Public Library*, 2009-2746, pp. 5-6 (La. 10/19/10), 50 So.3d 1259, 1262-63, as follows:

> Appellate courts reviewing civil service disciplinary cases are presented with a multifaceted review function. *Bannister* [*v. Dep't of Sts.*, 95-0404, p. 8 (La. 1/16/96), 666 So.2d 641, 647]; *Walters* [*v. Dep't of Police of the City of New Orleans*, 454 So.2d 106, 113 (La. 1984)]. Initially, deference should be given to the factual conclusions of the civil service commission. A reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. *Bannister,* 95-0404 at 8, 666 So.2d at 647; *Walters*, 454 So.2d at 114. Then, the court must evaluate the commission's imposition of a particular disciplinary action to determine if it is both based on legal cause and is commensurate with the infraction; the court should not modify the commission's order unless it is arbitrary, capricious, or characterized by abuse of discretion. *Id.* "Arbitrary or capricious" means the absence of a rational basis for the action taken, *Bannister*, 95-0404 at 8, 666 So.2d at 647; "abuse of discretion" generally results from a conclusion reached capriciously or in an arbitrary manner, *Burst v. Board of Commissioners, Port of New Orleans*, 93-2069, p. 5 (La. App. 1 Cir. 10/7/94), 646 So.2d 955, 958.

**DISCUSSION**

In his first assignment of error, Mr. Hardy asserts that the JJIC failed to give proper notice of his suspension.[1] However, it is evident from our review of the record that this due process argument was not adjudicated before the Commission. The proceeding before the Commission's Hearing Officer demonstrates that no argument was made, and no testimony was elicited, regarding notice to Mr. Hardy. As this Court explained in *Chaumont v. City of New Orleans*, 2020-0017, p. 5 (La. App. 4 Cir. 6/3/20), 302 So.3d 39, 45-6:

---

[1] La. Const. Art. 10, § 8(A) provides in pertinent part that" [n]o person who has gained permanent status in the classified state or city service shall be subjected to disciplinary action except for cause expressed in writing."

4

> It is well settled that appellate courts will not consider issues raised for the first time, which are not pleaded in the court below and which the district court has not addressed. *Council of City of New Orleans v. Washington,* 2009-1067, pp. 3-4 (La. 5/29/09), 9 So.3d 854, 856. The longstanding jurisprudential rule of law in Louisiana is that litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specifically pleaded and the grounds for the claim particularized. *Id.* 2009-1067, p. 4, 9 So. 3d. at 857 (citing *Mosing v. Domas,* 2002-0012 (La. 10/15/02), 830 So.2d 967; *Vallo v. Gayle Oil Co.,* 1994-1238 (La. 11/30/94), 646 So.2d 859). "The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute." *Id.* (citing *State v. Hatton*, 2007-2377, p. 14 (La. 7/1/08), 985 So.2d 709, 719).

In light of these legal precepts, we decline to consider the issue of sufficient notice now raised by Mr. Hardy for the first time on appeal.

In assignments of error 2 and 3, Mr. Hardy argues that the Commission's decision is contrary to the law and evidence, and that the Commission erred in concluding that Mr. Hardy's actions impaired the efficient operations of the JJIC. Because these assertions involve the Commission's factual findings, we will discuss both assignments of error together herein.

The Hearing Officer considered the testimony of Mr. Hardy, Mr. Lewis, Ms. Davis, Dichelle Williams, Superintendent of Residential Life, Dr. Webster, and Mr. Miles.

Mr. Hardy testified that on April 18, 2020, he was the only member of the maintenance department present between 7:00 a.m. and noon. He stated that he received a call from Ms. Davis around 11:00 a.m., requesting that the dining hall be cleaned and sanitized before lunch. He informed her that the dining hall would be cleaned. When Mr. Hardy received a second call just before noon, he informed Ms. Davis that the dining hall would be cleaned by Mr. Miles, who was scheduled to arrive at noon. Upon his arrival, Mr. Hardy instructed Mr. Miles to clean the dining hall. At that time, Mr. Hardy took his lunch break.

Mr. Hardy acknowledged that he was personally informed, through prior meetings with Mr. Lewis and Dr. Webster, of the enhanced cleaning protocols implemented in response to COVID-19. He understood that everyone, including the entire maintenance department, was expected to assist in the cleaning. Mr. Hardy stated that he knew the dining hall needed to be cleaned. However, he did not believe it was his responsibility, even if no other members of the maintenance department were available.

Mr. Lewis, who supervised the maintenance staff, testified that because of the new COVID-19 protocols, everyone in the maintenance department was asked to participate in cleaning. As discussed in the March 18, 2020 meeting, everyone was required to wipe down and disinfect surfaces each day. Mr. Lewis acknowledged that cleaning the dining hall was not Mr. Hardy's primary responsibility. However, he explained that if the facility was shorthanded, or if the plant attendants and laborers were unavailable, Mr. Hardy would have to assist with cleaning. In sum, Mr. Lewis stated that because Mr. Hardy was the only member of the maintenance department present when the request to clean the dining hall came in, he was responsible to clean it.

Karen Davis confirmed that Mr. Hardy was the only one in the maintenance department available when she requested that the dining hall be cleaned just before eleven o'clock on the morning of April 18, 2020. Thus, she expected that Mr. Hardy would perform the cleaning. Ms. Davis also stated that Mr. Hardy knew that lunch started around noon. She confirmed that Mr. Miles had just started to clean the dining hall when the kids came in shortly after noon. She explained that there was no way to keep them out until the room was fully cleaned. Ms. Davis notified her supervisor, Ms. Williams, of the incident.

6

Ms. Williams was responsible for the dietary department. She also wrote the COVID-19 protocol cleaning plan for the JJIC. Ms. Williams stated that Mr. Hardy, as a member of the maintenance department, was responsible for cleaning. She further explained that under the intensive routine cleaning plan, the dining hall needed to be cleaned immediately after the last group finished. Ms. Williams reported the incident to Dr. Webster.

Dr. Webster confirmed that he held a meeting on April 9, 2020, wherein he discussed with the maintenance department the importance of making sure the facility was cleaned. Mr. Hardy was present at the meeting. Dr. Webster explained that the maintenance department received written COVID-19 guidelines and an action plan that he distributed to all managers in the facility. The action plan, which was introduced into evidence, provides that the "[d]ining hall will be sanitized immediately after every unit meal distribution. Before the next group of youth are allowed to enter the dining hall. Maintenance will be on hand to hard surface disinfect the dining tables before meal consumption."

Dr. Webster further testified that Mr. Hardy's failure to clean the dining hall impacted the efficiency of the JJIC because it created a risk to the kids and staff of being exposed to COVID-19. He explained that Mr. Hardy's actions interfered with the meal operation because the room should have been cleaned before the kids entered for lunch.

When asked why he believed Mr. Hardy's seven-day suspension was commensurate with the offense, Dr. Webster stated:

> Well again, we are in the middle of a pandemic which has been a life or death involving city employees and we have had outbreaks in jails all around the country. The kids are our responsibility as the city, and we are mandated to ensure their safety and care, and any attempts to comply with the CDC guidelines which was our plan of action, and we reiterated these

7

things and try to ensure compliance from all of our staff and this constitutes not complying with the plan.

Mr. Miles testified that he was a plant attendant at the JJIC. He confirmed that when he arrived at noon on April 18, 2020, Mr. Hardy asked him to clean the dining hall. He began to clean, but was unable to finish before the kids arrived. Mr. Miles acknowledged that someone from the maintenance department was required to clean the dining hall after every meal.

In denying his appeal, the Commission found that Mr. Hardy's failure to clean the dining hall in accordance with the established COVID-19 cleaning protocols impaired the efficient operation of the JJIC and that the seven-day suspension was commensurate with the offense. Based on the record before us, we find that the Commission's factual findings were supported by the evidence. The undisputed testimony and documentary evidence clearly demonstrates that Mr. Hardy was aware of the enhanced cleaning and sanitizing protocols that were implemented as a result of the spread of COVID-19. He was also aware that the entire maintenance department was expected to perform daily cleaning practices. Because Mr. Hardy was the only member of the maintenance department present when Ms. Davis requested that the dining hall be cleaned, it was Mr. Hardy's responsibility to perform the cleaning. However, Mr. Hardy made no effort to initiate the cleaning or to assist Mr. Miles. As a result, the dining hall was not completely cleaned and sanitized for the lunch service.

Given that the Commissions' ruling was reasonable, we conclude that the Commission was not arbitrary or capricious in finding that legal cause existed for the disciplinary action. Moreover, considering the potentially dangerous consequences for failing to follow the COVID-19 cleaning protocols in this

juvenile detention facility, we find no error in the Commission's finding that the seven-day suspension was commensurate with the infraction.

In his final assignment of error, Mr. Hardy maintains that the Hearing Examiner erred by refusing to allow his counsel to make a proffer of the evidence contained in his Motion in *Limine.* We find no merit in this argument. The Hearing Examiner indicated that he did not believe that the information contained in the motion was relevant. [2] However, he specifically stated that the Motion in *Limine* and attached documents would be sealed separately from the rest of the record and marked as Appellant's Proffer Number 1. Thus, Mr. Hardy was allowed to make a proffer. Assuming that Mr. Hardy is, in fact, arguing that the Hearing Officer erred in excluding the evidence attached to the Motion in *Limine*, he does not brief that argument in this appeal. Consequently, any such argument is deemed abandoned. *See* Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4); *See also, Woods v. French Market Corp*., 2021-0689, p. 6 (La. App. 4 Cir. 3/23/22), 336 So.3d 912, 916.

**CONCLUSION**

For the foregoing reasons, we find that the evidence supports the Commission's decision that the discipline imposed upon Mr. Hardy was based on legal cause and was commensurate with his infraction. Accordingly, that decision is neither arbitrary, capricious, nor an abuse of discretion. We affirm.

**AFFIRMED**

---

[2] Mr. Hardy claims that the evidence contained in the Motion in *Limine* demonstrates personal animosity of Dr. Webster toward Mr. Hardy, which influenced the discipline.